ALVAH L. SAWYER v. THE MENOMINEE LOAN & BUILD-
ING ASSOCIATION.

*Building and loan associations—Fraudulent representations—By-
laws—Payment of loan.*

1. It is immaterial (in a civil suit) whether a false representation is made innocently or fraudulently, if, by its means, the party to whom it is made is injured; citing *Holcomb v. Noble*, 69 Mich. 396; *Totten v. Burhans*, 91 Id. 499.

2. In order to secure a loan of a mutual building and loan associ-

ation, organized under Act No. 50, Laws of 1887 (3 How.
Stat. §§ 3981a—3981q), the applicant was obliged to subscribe
for stock in and become a member of the association.   He
took the loan in good faith, and in full reliance upon the rep-
resentation of the secretary of the association that it would
and did construe its by-laws as the secretary then construed
them, which construction, if adherred to by the association,
would have enabled the applicant to pay the loan at the end
of any quarter upon a basis stated by the secretary. After
making 17 quarterly payments, the applicant decided to settle
and pay up the loan and cancel his stock pursuant to the rep-
resentation made by the secretary, and was then for the
first time informed that the by-laws did not give such right,
whereupon he tendered the amount which he claimed was
sufficient to discharge his indebtedness to the association
under the by-laws as represented to him by the secretary,
and, upon the refusal of the association to accept said tender,
filed a bill to compel it to do so, and to cancel the bond and
mortgage given to secure the loan.   And it is held that the
complainant is entitled to have the contract construed in the
light of the by-laws as they were represented to him, or that
at least the defendant should receive its money, less the pay-
ments made, with interest at 7 per cent. from the time the
loan was made.

Appeal from Menominee.   (Stone, J.)   Argued June 27,
1894.   Decided December 22, 1894.

Bill to compel the cancellation of a mortgage and the
accompanying bond upon payment of a certain amount.
Complainant appeals.   Decree reversed, and one entered
in this Court in accordance with the opinion.   The facts
are stated in the opinion.

*Sawyer, Waite & Waite,* for complainant.

*W. H. Phillips,* for defendant.

LONG, J.   In September, 1888, complainant applied to
the defendant association for a loan, and in order to pro-
cure it was obliged to subscribe for stock in the association.
The taking of the stock and procuring the loan were all
one transaction.   James H. Walton was secretary of the

association, and acted in the transaction in behalf of the defendant. Complainant claims that, before he subscribed for the stock, Walton, in setting forth the advantages to be gained by a borrower, among other things, represented that such borrower could pay a loan at any time, at the end of any quarter, and could settle on the basis of the loan's being canceled in eight years, and at one-eighth thereof each year, taking the actual money loaned as a basis, and, so far as settlement was concerned, disregard the premium bid for the loan. The secretary explained that the association could do this because of the advantages it had in compounding interest monthly, and receiving interest on premiums and installments on premiums, and that the right to settle on this basis was plainly guaranteed by the by-laws.

Complainant claims that, relying upon these representations, he did not examine the by-laws, but agreed to take a loan of $4,500, and subscribed for 45 shares of the capital stock of the association, having bid for such stock $22\frac{1}{2}$ per cent premium. After subscribing for such stock and securing the loan, complainant claims that, relying upon the representations made by the secretary, he continued for 17 quarters to pay the installments on the stock and interest, when he decided to settle and pay up the loan and cancel the stock pursuant to the representations made by the secretary, and was then for the first time informed that there was no such by-law, whereupon he tendered the sum of $1,700, and demanded the cancellation of the stock, bond, and mortgage given to secure the loan, which was refused. This bill was filed for the purpose of having the bond and mortgage canceled upon the payment of the $1,700, which complainant claims is sufficient to discharge his indebtedness to the company under the by-laws as represented to him by the secretary.

The testimony was taken in open court, and at its close

the court filed a written opinion, which sets out substantially that the complainant's object in joining the association was to secure the loan; that the certificate in the form used by the association was issued to him for the 45 shares, and on the same day of its issue was duly assigned to the defendant to secure in part the loan; that in the written application signed by complainant he agreed " to comply with the charter and by-laws of your association;" that he secured the loan, or the preference for an advance on 45 shares of the stock, at a premium of 22½ per cent; that he filled out, signed, and executed the form of bond and mortgage in use by the defendant, which bond recited that he had become a stockholder of the association, and had subscribed to its charter and by-laws; that the mortgage contained the following condition:

" That if the parties of the first part shall and do well and truly pay or cause to be paid to the said party of the second part, at its office in Menominee, the full sum of $4,500, payable in installments of $22.50, on the first Tuesday of each and every month beginning on the first Tuesday of September, 1888, together with interest on the principal sum at the rate of 8 per cent. per annum, payable in monthly installments of $30 each, at the same place and time respectively, until the said shares of stock shall have attained the full value of $100 each, and shall pay all fines on said stock, or shall sooner pay said indebtedness under the provisions of the by-laws of said second party, according to a certain bond bearing even date herewith, executed by said Alvah L. Sawyer to the said party of the second part, then these presents and said bond shall cease and shall be null and void."

The opinion recited that the amount actually received by complainant on the loan was $3,487.50; that he made payments for 17 quarters, or 51 monthly installments of $52.50 each, denominated by said association as $22.50 installment and $30 interest; that up to December, 1892, when he sought to withdraw from the association, he had

paid $2,677.50. The court stated the claims of complainant made in his bill:

1. That he was induced to join the association and make said loan by reason of certain false and fraudulent representations of its secretary and business manager; that it was contemplated from the first that he would want to settle at the end of about four years, and that the secretary represented to him that for the purpose of settlement after the first year a borrower could disregard the premium bid, and could for each year his loan continued deduct one-eighth from the amount of money actually received, and could cancel the loan by paying the balance thereof, disregarding the premium, and on the same basis and at the same rate at the end of any quarter year, so that at the end of four years the loan would be half paid up; that the secretary figured over the loan desired on the basis above specified, and showed that for the first four years the average cost of the use of the money would not exceed about 8 per cent.; and that the secretary said that at the end of four years complainant could cancel the mortgage by paying one-half the amount of money actually received, and that the right was plainly guaranteed to borrowers in the by-laws of the association.

2. That the by-laws are capable of the construction given them by the secretary, and complainant asks for such a construction.

The court below says that upon a review of the testimony he found that the representations were made substantially as claimed by complainant, but that he did not think any fraud was practiced by defendant or its agent, but that there was an honest belief on the part of the secretary that at the end of the four years one-half of the loan would, by the working of the scheme, be paid off; that both parties were bound to take notice of the law of this State under which the defendant association was formed, which constituted the charter of the defendant; that, in his opinion, the secretary believed in the truth of what he asserted, but that both he and the complainant were bound to know that the company could not be operated on such basis without a violation of the charter,

and that if the complainant did not read the charter and by-laws it was his fault.   The court further said:

"It will not do for a man, in the absence of fraud, to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.   If this were permitted, contracts would not be worth the paper on which they are written.   A contractor must stand by the words of his contract, and, if he will not read what he signs, he alone is responsible for his omission."

A decree was entered in the court below dismissing complainant's bill, and from which he appeals.

It is evident from all the testimony that complainant took the loan in good faith, and in full reliance upon the assurances given by the secretary that the defendant company would and did construe the by-laws as the secretary then construed them, and he made his contract in reliance upon such interpretation.   If that interpretation had been adhered to by the company, he could have settled at any time.   We think he is now entitled to have the contract construed in the light of the by-laws as they were represented to be, or that at least the defendant should receive its money, with interest at 7 per cent. from the time the loan was made.   Whether such misrepresentations were intended or were mere matter of mistake, the complainant has been misled to his injury; and the law is well settled in this State that it is immaterial whether a false representation is made innocently or fraudulently, if, by its means, the party is injured.   *Holcomb v. Noble,* 69 Mich. 396; *Totten v. Burhans,* 91 Id. 499.

We do not think that the rule laid down by the court below, that the complainant had the opportunity to find out what the by-laws were, and therefore could not complain if he did not protect himself, can be sustained.   The parties were not standing on an equal footing.   The secretary represented the company, and the complainant might

well rely upon the interpretation of the by-laws which the secretary gave. Complainant did not see the by-laws. They were not exhibited to him. The secretary claimed to know what interpretation the company put upon them, and the complainant chose to rely upon such representation. The rule laid down by Lord Chelmsford in *Railway Co. v. Kisch*, L. R. 2 H. L. 99, 120, it seems to us, is specially applicable to the present case. It was there said:

" When once it is established that there has been any fraudulent misrepresentation or willful concealment by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector, ' You, at least, who have stated what is untrue, or have concealed the truth, for the purpose of drawing me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty.' "

In *Mead v. Bunn*, 32 N. Y. 275, the rule was also laid down that the omission of one of the parties to an agreement to make inquiries as to the truth of facts stated by the other cannot be imputed to him as negligence.

In *Bank v. Hunt*, 76 Mo. 439, it was held that a person buying stock of a bank from the bank is entitled to rely upon assurances of an officer of the bank as to its financial condition, and, if already a stockholder, he is not bound to avail himself of his right of examining the books of the bank; and in *Hough v. Richardson*, 3 Story, 659, it is said:

" Where, in a treaty for the sale of property, the vendor makes material misrepresentations, by which the purchaser, having no knowledge, or means of knowledge, in relation thereto, is actually deceived to his injury, a court of equity will rescind the contract in pursuance thereof, although it do not contain the misrepresentation; and it matters not, in such a case, whether the misrepresentations be the result of mistake or fraud."

The misrepresentation was made in the present case by

the secretary of the defendant, and the company has had the benefit of the loan to the injury of the complainant. Equity requires that the mistake be corrected, and the complainant relieved of any claim which defendant may have under the interpretation of the by-laws it now claims.

The decree of the court below dismissing complainant's bill will be overruled, and a decree entered in this Court authorizing him to pay the mortgage at present on the basis of the by-laws as represented, unless the defendant shall elect within 30 days to take its moneys at the rate of 7 per cent. per annum from the time the loan was made, deducting payments made, as the complainant offers to do in his bill; but no interest will be computed from the date of the tender, as the tender was sufficient to meet the amount unpaid on the mortgage at that date. Complainant will recover costs of both courts.

McGRATH, C. J., and MONTGOMERY, J., concurred with LONG, J.

GRANT, J. (dissenting). The rights of the complainant, Sawyer, must be determined from the standpoint of his relations to the defendant and its members. He voluntarily applied and became a member of the association. He was presumed to know the law, and, whatever may be the rule where an officer of the company misstates the effect of the by-laws, the charter of the defendant is binding upon him. Misrepresentations as to the effect or construction of the statute will not avail him. So, also, if Walton represented that there were by-laws which in point of fact were in conflict with the charter, this could not avail, for such by-laws would be void. The circuit judge found as a fact that the scheme as claimed by the complainant is not warranted by the charter, and that the defendant could not carry on business under such a scheme.

Section 10 of the act in regard to building and loan associations[1] provides:

"A borrower may repay a loan at any time, and, in the event of the repayment thereof before the expiration of the eighth year after   *   *   *   the date of issue of the series of stock in such association on which the loan may have been made, there shall be refunded to such borrower one-eighth of the premium paid for every year of the said eight years then unexpired."

Section 6 provides that—

"Any stockholder wishing to withdraw from the said corporation shall have the power to do so by giving 30 days' notice in writing at a stated meeting of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, and such interest thereon or such proportion of the profits thereon as the by-laws may determine."

The circuit judge, in his written opinion, said:

"Both parties were bound to know these provisions. All members must participate equally in the profits. This is the fundamental law of the organization as indicated by the statute. The plan contended for by the complainant, by which an arbitrary amount of the loan was to be considered as paid every year, would be subversive of the scheme, and hence illegal. Even if such were the agreement, a court of equity would not adopt the agreement, nor enforce it, when the agreed rule would produce a result contrary to the evident design of the Legislature in creating building associations. The plan which it is claimed was presented by the secretary in its operation would have worked an injustice to other members, and would have been inequitable and unfair."

The conclusion of the circuit judge is, in my judgment, fully justified. The profits of the company depend upon the amount of business done, the premiums bid for loans, and the expenses necessarily incurred. These companies cannot, under the law, guarantee a certain amount at a speci-

---

[1] 3 How. Stat. § 3981a et seq.

fied time. Under the complainant's theory, he obtained
his loan for over four years at about 6 per cent. per annum.
I am unable to see how this is possible under the scheme
authorized by the law.    It would be impossible for these
associations to exist by simply loaning money at 6 per
cent., or by authorizing members to withdraw upon the
basis of the representations now claimed. This association
had just been formed when the complainant became a
member.    As Mr. Walton testified, they were all "green
at the business." If complainant may rely upon the state-
ments of Walton, which in fact were only his construction
of the by-laws, all the other members may do likewise, if Mr.
Walton so informed them.    The result would be the ruin
of the association.

The complainant was a lawyer of experience and ability,
living in the same place with Walton.    The organization
of the association had just been completed.    Walton acted
honestly.    The by-laws were at complainant's disposal to
examine if he chose, but he preferred to rely upon the
construction placed upon them by a layman.    He continued
a member of the association for over four years, receiving
its benefits, and acting in accordance with its charter and
by-laws.    The injustice to other members of the defendant
in now permitting him to withdraw, not in accordance
with the charter and by-laws as they are, but as Mr.
Walton, nearly five years before, explained them to
him, is manifest.    I think his discovery that the by-
laws were not as represented came too late.    *Ogilvie v.
Insurance Co.*, 22 How. 391.

One author says:

"While by-laws are not always binding upon strangers,
a person who becomes a member of an association or com-
pany after the adoption of a by-law is not considered a
stranger, and by joining the organization he is deemed to
accord his assent thereto, and to be thereafter bound by

the obligations which it may impose upon the members."
Beach, Priv. Corp. § 321.

Another author, after stating the essentials of valid by-laws, says:

"Where these features are found, and the by-law has been properly passed, every member's consent is conclusively presumed, and his submission required." End. Bldg. Ass'ns, § 271; Bac. Ben. Soc. § 81, and note.

In *Upton v. Tribilcock*, 91 U. S. 45, 50, the defense was that a subscription to the stock of a company was obtained by the fraudulent representation of the agent that the stock was in part non-assessable. It was there said:

"That the defendant did not read the charter and by-laws, if such were the fact, was his own fault.    *    *    *
That a stockholder may relieve himself from his liability by proof that he was misinformed as to the effect of his contract when he made it would be a disastrous doctrine. That a defendant who could not, by contract, lawfully relieve himself from liability as a stockholder, can accomplish that result by proof that it was fraudulently represented to him that he could so relieve himself, would be strange indeed."

I do not wish to be understood as saying that there are not cases in which a stockholder will be entitled to relief against a corporation for false and fraudulent representations in selling the stock to him. Such was the case of *Railway Co. v. Kisch*, L. R. 2 H. L. 99. In that case a prospectus was issued by the directors of the company, containing false and fraudulent representations in regard to its capital, upon the faith of which the defendant agreed to purchase some of its stock. But no such state of facts exists · in the present case. The whole difficulty arises upon the honest, but mistaken, construction of the by-laws placed upon them by the secretary of the company to one who applied for membership almost at the inception

of the organization. It is not a rule of universal application that a party is entitled to rely upon the representations of another. When the complainant applied for membership he was bound to take notice of the charter and by-laws of the defendant. *Came v. Brigham*, 39 Me. 38; *Cummings v. Webster*, 43 Id. 192. When one has the means of knowledge at his disposal when becoming a member of associations like that of the defendant, and chooses to rely upon the statement of an officer of the company as to the effect of the by-laws, he does so at his peril, and should not, years after, be heard to say that the officer misrepresented them.

I think the decree should be affirmed.

HOOKER, J., concurred with GRANT, J.