### SEEBER v. PEOPLE'S BUILDING, LOAN & SAVING ASS'N.

(Supreme Court, Appellate Division, Second Department. January 10, 1899.)

1. CORPORATIONS—STOCK SUBSCRIPTIONS — AGENT'S FRAUDULENT REPRESENTATIONS—EVIDENCE.
    Where plaintiff alleged that his assignors had been induced to subscribe for stock in a corporation by fraudulent representations of its agent, he is entitled to show what representations were made by such agent in an action to recover money paid on the subscriptions.

2. SAME — RECOVERY OF PAYMENTS — MONEY HAD AND RECEIVED — QUESTION FOR JURY.
    Plaintiff's assignors subscribed for stock in "The People's Building, Loan and Saving Association of Geneva, N. Y.," organized in New Jersey. The

name of defendant, a New York corporation, was the same excepting the words "of Geneva, N. Y.." and plaintiff's certificates were signed by two persons, who were president and secretary of both corporations, but bore defendant's corporate seal. The names of plaintiff's assignors appeared in defendant's books as shareholders, and the certificates had been sent by defendant to its New Jersey agents, with pass books containing entries of payments intended for the New Jersey corporation, which were delivered to plaintiff's assignors. Subscriptions were received by defendant's agents in New Jersey, and by them remitted to defendant. *Held*, that defendant's liability for the subscriptions paid was for the jury.

3. ASSUMPSIT—COMPLAINT—SUFFICIENCY—EVIDENCE.

A complaint alleged that plaintiff's assignors were induced to subscribe for stock by the false and fraudulent representations of agents in fact employed by defendant, a New York corporation; that the corporation was organized in good faith under New Jersey laws, and was doing business wholly in that state; and that said assignors subscribed relying on such representations, which defendant knew were false. *Held* sufficiently broad to justify the admission of evidence entitling plaintiff to recover payments made as for money had and received.

4. CORPORATIONS—STOCK SUBSCRIPTIONS — AGENT'S MISREPRESENTATIONS—LIABILITY.

Where a corporation retains money paid on stock subscriptions induced by fraudulent representations, it cannot avoid responsibility for such representations.

Appeal from special term, Richmond county.

Action by Charles Seeber against the People's Building, Loan & Saving Association. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William H. Hamilton (William L. Kiefer, on the brief), for appellant.

Chester M. Elliott, for respondent.

WILLARD BARTLETT, J. The plaintiff sues as the assignor of seven persons, who, in the year 1891, subscribed for certain shares of stock in a corporation purporting to have been organized under the laws of the state of New Jersey, having its principal and home office at the city of Trenton, in that state, but whose corporate name was "The People's Building, Loan and Saving Association of Geneva, N. Y." It will be observed that this name is the same as that of the defendant in this action (which is a New York corporation), with the exception of the words "of Geneva, N. Y." The terms of the subscriptions made by the plaintiff's assignors to the stock of the New Jersey corporation required certain monthly and quarterly payments to be made upon each share, and such payments were duly made by the said subscribers, to an amount aggregating $3,224.75, to persons in New Jersey, who assumed to receive the same as agents of the corporation in which the subscribers had become shareholders. The evidence in the case indicates that very little business was ever really done by the New Jersey association after its certificate of incorporation was filed. The certificates of stock which the plaintiff's assignors received were signed by N. B. Covert, president, and D. F. Attwood, secretary. These gentlemen were at the same time respectively presi-

dent and secretary of both corporations. The certificate, however, bore the corporate seal of the New York association. The home office of the New York corporation was first·at Geneva and then at Syracuse. In the defendant's books, kept at Syracuse, appeared the names of the plaintiff's assignors as shareholders in the New York association, entered under the respective dates of the various stock certificates which had been issued to them. It was conceded that the certificates, accompanied by pass books, had been sent by the defendant to James C. Beebe at Trenton, N. J., who delivered them to Henry D. Poole, who, in turn, delivered them to the plaintiff's assignors. These pass books contain entries of payments made by plaintiff's assignors, which they intended for the New Jersey corporation, in which they supposed they had become shareholders. The moneys thus paid all went· to the defendant through the agency of Poole, Beebe, or a collector named Charles A. Trimble. In the course of time the plaintiff's assignors discovered that their money had gone to the defendant, instead of going to a corporation organized under the laws of the state of New Jersey; and the plaintiff, who had succeeded to their rights, brought this suit to recover the amounts respectively paid out by them on account of their subscriptions. The theory of the action is that the defendant caused the New Jersey association to be organized colorably as a corporation only for the purpose of fraudulently evading the New Jersey statute, which prohibited the defendant from transacting any business in that state without first making a deposit of money or securities in the sum of $30,000 with the state authorities. The complaint alleged that the defendant, through agents really employed by it, but pretending to act in behalf of such New Jersey corporation, induced the several assignors of the plaintiff to subscribe to the stock of the New Jersey corporation upon the false representation that the association had been in good faith organized under the laws of New Jersey, and that it was doing business wholly within that state, where all its investments had been made, and would be made, on landed security; that said assignors relied upon such representations in making their subscriptions; and that the representations were, in fact, all grossly false and fraudulent, to the knowledge of the defendant. The plaintiff was not allowed, however, to prove these alleged misrepresentations. The evidence which he sought to introduce for that purpose, not only from the assignors, but from Poole, who is alleged to have made the representations, was excluded. At the end of the plaintiff's case the counsel for the defendant moved to dismiss the complaint upon the ground that there was no proof to show any fraud or false representations upon the part of the defendant. The counsel for the plaintiff then asked the court to submit the case to the jury upon all the evidence, and particularly to submit to them the question as to the defendant's responsibility for the acts and representations of Beebe and Poole, upon the ground that, if they found the defendant responsible for such acts and representations, they could find against the defendant on the question of fraud. The plaintiff's counsel also asked to go to the jury upon the question as to whether the moneys had not been taken from each of the plaintiff's assignors "under a mistake of fact upon his part, induced by mis-

representations on the part of Mr. Poole and Mr. Beebe; and, the defendant having parted with no consideration for the moneys it received, it has converted the moneys, and that the plaintiff, being the assignee, could recover at its hands."

I think two errors were committed in the court below, which require us to reverse the judgment. The plaintiff should have been permitted to show what representations were made by Poole as an inducement to the subscribers to take their stock; and, even, notwithstanding the exclusion of the evidence offered for this purpose, there was still enough proof in the case to require the court to submit to the jury the question whether, independently of the alleged fraud, the defendant was not liable as for money had and received. Although the suit was not brought in form for money had and received, the proof tending to establish a cause of action on that ground was received without objection; and, indeed, the allegations of the complaint seem to be sufficiently broad to justify the admission of the evidence, had objection been made. The remedy by action for money had and received has been considerably broadened in modern times, so as to embrace many cases to which it was not formerly applied. Whether the money was originally acquired by the defendant lawfully or wrongfully, it is enough that the circumstances establish the right to payment on the one side, and the correlative duty to pay on the other. This right and duty, says Andrews, J., in Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606, "create the necessary privity, and justify the implication of a promise by the defendant to do that which justice and equity require."

As to the question of fraud in the case, the persons who acted for the defendant in collecting the moneys from the plaintiff's assignors, which moneys found their way directly into the defendant's treasury, must certainly be deemed its agents for some purposes. The defendant could not avail itself of the subscriptions, and at the same time avoid responsibility for the representations of the persons by whom they were obtained. Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779. The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur.