PETERSON *v.* PEOPLE'S BUILDING, LOAN & SAVING ASSOCIATION.[1]

| 124 | 573 |
| 145 | [1]642 |
| 145 | [2]643 |

1. BUILDING AND LOAN ASSOCIATIONS — CONTRACT — EVIDENCE — PRINTED LITERATURE.

Where a building and loan association has supplied its agents with printed literature, in reliance on which plaintiff was induced to purchase stock, for which a certificate was issued to him indorsed with the condition that "the association assumes no obligation other than contained in its printed literature," it is not in position to claim that certain withdrawal privileges specified in the literature furnished to plaintiff are no part of his contract because not set out in the articles of association, by-laws, or certificate of membership.

2. SAME—DEFENSES—ULTRA VIRES.

The defense of *ultra vires*, when set up by a building and loan association to defeat its contract with a shareholder, whereby the latter seeks the return of moneys paid into the association, ought not to prevail unless very clearly established.

[1] Rehearing denied December 11, 1900.

Error to Crawford; Sharpe, J.   Submitted April 11, 1900.   Decided September 13, 1900.

*Assumpsit* by Swan Peterson against the People's Building, Loan & Saving Association to recover money paid on a stock subscription.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*George L. Alexander*, for appellant.

*Joseph Patterson*, for appellee.

MOORE, J.   The plaintiff sued the defendant in an action of *assumpsit* to recover for money paid on a certificate for five shares of stock issued by defendant to him, and interest thereon.   The case was tried by a jury, who rendered a verdict in favor of the plaintiff.   From the judgment entered upon the verdict, the defendant has brought the case here by writ of error.

The defendant is a New York corporation.   Its principal office was at Geneva, N. Y.   The plaintiff offered testimony showing that in 1890 a man representing himself to be the agent of the defendant visited Grayling, sold certificates of shares, and organized a local branch of the defendant company.   The plaintiff testified that the agent had with him a small book issued by the defendant, a copy of which he gave to plaintiff to read, and for the purpose of inducing plaintiff to purchase stock in the defendant company.   The plaintiff understood from the agent that what was contained in the book left with him was all the by-laws of the company, and testified that he was not furnished with and never saw any other by-laws until they were introduced in evidence by the defendant upon the trial of this case.   Contained in the book furnished the plaintiff were the following statements:

"Our plan, limited monthly payments in all classes. Absolutely unforfeitable under our suspension plan.   Read this little book carefully.   It will interest you.   *   *   * We offer to the public three classes of installment stock.

Class A: Shares in Class A are payable in monthly installments of $1.00 each, due on the last Saturday in each month. There is also a quarterly installment or expense payment of twenty-five cents required on each share, which is due on the last Saturdays of March, June, September, and December in each year. All shares issued in this class have the same quarter dates. Sixty-six monthly installments and twenty-two quarterly installments are all that will be required in this class. The owner may be required to make a lesser number of payments in case the stock matures in less than five and one-half years, or, if it takes more than five and one-half years, no further payments will be required. The installments paid into the loan fund in this class are withdrawable at any time after three years from the date of the certificate, and, if the installments are withdrawn during the first year, an interest of six per cent. will be paid, and, if they remain for more than four years, seven per cent. will be paid. * * *

"Withdrawals: Class A is withdrawable at any time after date of issue, and the owner will receive the entire amount paid into the loan fund, together with an interest of six per cent. per annum if withdrawn during the four years. If withdrawn after the four years, and before maturity, an interest of seven per cent. per annum will be paid.

"Agent's authority: No representative, agent, or officer of the People's Building, Loan & Saving Association has power to waive or alter any of the conditions or terms expressed in the certificate of shares, or to give any receipt for money that shall bind this association, except as herein provided. Further, this association will not be responsible for any bills contracted by any person claiming to be a representative of this association, unless explicit authority is given him by the manager, which he will have in writing. No agent has authority to promise loans to borrowing members, and the association will assume no liability for any representations made, other than contained in the printed literature."

Plaintiff, relying upon these statements, subscribed for five shares of stock, for which there was issued to him a certificate, the essential portions of which read as follows:

"This is to certify that Swan Peterson, of Grayling, State of Michigan, is constituted a shareholder in the

People's Building, Loan & Saving Association, incorporated under the laws of the State of New York, and holds five shares therein, of one hundred dollars each; and in consideration of the entrance fee, together with agreements and full compliance with the terms and conditions printed on the back of this certificate, and the articles of association and by-laws adopted by the said association, all of which are hereby referred to and made a part of this contract, the said People's Building, Loan & Saving Association agrees to pay said shareholder, or his heirs, executors, administrators, or assigns, the sum of one hundred dollars for each of said shares at the end of five years from the date hereof, or at maturity,   *   *   *.  all of which are payable in the manner and upon the conditions set forth in the articles of association and by-laws of the association, and terms and conditions printed on the back of this certificate."

On the back of the certificate, among others, were the following statements:

"*First.* The shareholder or person who is to pay all installments under this certificate agrees to pay or cause to be paid to the association a monthly installment of one dollar for each share mentioned in the certificate on or before the last Saturday of each month during the continuance of the certificate.

"*Second.* The shareholder or person who is to pay all installments under this certificate agrees to pay or cause to be paid to the association a quarterly installment of twenty-five cents for each share mentioned in the certificate on or before the last Saturday of the third, sixth, ninth, and twelfth months of each current year.   *   *   *

"*Fourth.* If the shareholder or person who is to pay or cause to be paid all installments under this certificate shall fail to pay or cause to be paid any installment required to be paid under this certificate, for three successive months, this certificate, together with all installments paid thereon, shall, without notice, be forfeited to the association, as prescribed by the articles of association and by-laws.   *   *   *

"*Sixth.* No agent is authorized to change or alter this certificate, or to waive forfeiture, or to extend credit, or grant permits, or alter notices, proofs of any other matter; and the association assumes no obligation other than contained in its printed literature.   *   *   *

"*Eighth.* The articles of association, by-laws, terms, and conditions, together with the application, are to be construed together as the contract between the shareholder and the association."

The plaintiff made sixty-nine monthly payments, and also paid his quarterly dues. In September, 1898, plaintiff notified defendant in writing that he desired to withdraw from membership, and applied for a return of the monthly installments paid by him, with interest. He was then notified his stock had been forfeited for nonpayment of dues. No notice was given him of an intention to forfeit his stock because of his failure to make any payment he ought to have made.

The defendant offered in evidence its articles of association and by-laws. It was admitted that defendant claimed to have forfeited the stock some time prior to the letter of September, 1898. No other evidence in the case was offered by the defendant. When the articles of association were adopted, in 1887, section 2 of article 14 read as follows:

"SEC. 2. Any shareholder may at any time withdraw any one or more of his or her shares, and cease payment thereon, provided said shareholder has been a member of the association for six months or more, by giving two weeks' notice of such desire to the secretary, and paying a fee of one dollar."

In November, 1888, this section was stricken out. In 1893 section 2 of this article, reading as follows, was adopted:

"SEC. 2. Members holding certificates in class A shall be entitled to withdraw the amount paid into the loan fund on the same, provided such certificates have been in force for three years or more, and that they are in good standing on the books of the association at the time the application for withdrawal is made. Members holding certificates in classes B and C shall be entitled to withdraw the amount paid into the loan fund on the same, provided they have been in force for six months or more, and that they are in good standing on the books of the

124 MICH.—37.

association at the time application for withdrawal is made. Notice of thirty days may be required by the association from members wishing to withdraw the payments on such stock, and the time and manner of paying shall be the same as on stock at maturity: *Provided*, that only one-half of the receipts of the association in any one month shall be applicable to the payment of such withdrawals."

This section was repealed in January, 1895.

The defendant asked the circuit judge to direct a verdict in its favor. He declined to do so, but charged, in substance, that if the agent furnished the plaintiff with the printed statements offered in evidence, and the plaintiff, relying upon the statements contained therein, subscribed for the stock, the company would be bound by those statements; that if, on the other hand, as claimed by counsel for defendant, this printed matter was not at that time circulated by the company, their verdict must be for defendant. It is now claimed, and was claimed upon the trial of the case, that as the printed book furnished to the plaintiff by the agent was no part of the articles of association or by-laws, and was no part of the certificate which was issued to the plaintiff, what was contained in it forms no part of the contract. Counsel cites 1 Cook, Stock, Stockh. & Corp. Law (3d Ed.), §§ 492, 493, and many cases. There is no doubt about the general rule that the contract between the stockholder and the corporation is evidenced by the terms on the face of the certificate, the articles of association, by-laws, and the printed conditions on the back of the certificate, together with the application for membership. But what are the facts here? The defendant company appointed its agents, and furnished them with printed literature, and sent them out to solicit stock and to organize local branches. Relying upon the printed statements of the company itself, the plaintiff was induced to subscribe for five shares of stock. As an evidence of his right to these shares, a certificate is issued to him, and upon the face thereof he is told that the conditions printed upon the back of the certificate are part of the agreement; and in the sixth condition, after speaking

of the authority of the agent, the statement is there made, "The association assumes no obligation other than contained in its printed literature." If this is not equivalent to saying that the holder of the certificate may rely upon the printed literature which had been furnished him to induce him to become a member, then, indeed, words have become meaningless, and may be used to trap the unwary. See *Sawyer* v. *Building Ass'n,* 103 Mich. 233 (61 N. W. 521).

The counsel for defendant now says that the alleged contract was one which the defendant had no power to make under the laws of the State of New York, and that it is *ultra vires.* No defense of that kind was claimed in the court below. The laws of the State of New York were not put in evidence. There is nothing in the record to indicate that, in making the contract which plaintiff says was made, the defendant exceeded its powers; but, if there was, we think such a defense ought not to prevail unless the law is very clear. It is shocking to one's sense of justice, when a contract has been completed by one of the parties to it, and after he has parted with a large sum of money, and asks the other party to the contract to perform his part of the agreement, to have it said by the other party to the contract: "In entering upon the agreement I made with you, I exceeded my powers. I will neither perform my contract, nor return to you your money." A like defense to this was urged by this defendant in the case of *O'Malley* v. *Saving Ass'n,* 35 N. Y. Supp. 14. In disposing of the case, the following language was used:

"The first reason urged upon the attention of the court is that, in entering into such a contract as the one under consideration, the defendant has exceeded the powers conferred upon it by the statute. It is possible that in the management of its affairs the defendant may have gone beyond the scope of the statute, but certainly the powers exercised by it were incidental to those conferred; and, inasmuch as it has reaped the benefit of the contract entered into, and there is nothing therein which contravenes

public policy, the plainest rules of good faith require that it should be upheld. *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62 (20 Am. Rep. 504); *Rider Life Raft Co.* v. *Roach,* 97 N. Y. 378; 1 Wat. Corp. pp. 600, 601, 605; Thomp. Bldg. Ass'ns, p. 257."

See, also, *Seeber* v. *Saving Ass'n,* 55 N. Y. Supp. 364; 27 Am. & Eng. Enc. Law, p. 359; *Carson City Sav. Bank* v. *Carson City Elevator Co.,* 90 Mich. 554 (51 N. W. 641, 30 Am. St. Rep. 454).

Judgment is affirmed.

The other Justices concurred.