GERAGHTY *v.* WASHTENAW MUTUAL FIRE-INSURANCE CO.

1. INSURANCE—MUTUAL COMPANY—FARM PROPERTY—WHAT CONSTITUTES.

A policy of fire insurance, issued by a mutual company organized under chapter 195, 2 Comp. Laws, upon "farm products, farm implements, carriages, and live stock on premises," does not cover the fixtures and utensils of a slaughterhouse, conducted by the insured, and used in a wholesale meat business in which he is engaged.

2. SAME—KNOWLEDGE OF OFFICER—ESTOPPEL.

A farmers' mutual fire-insurance company is not estopped to deny liability for loss on property not insurable under its charter, by the act of its president in accepting the application and issuing the policy with full knowledge of the character of the property attempted to be insured.

Error to Washtenaw; Kinne, J. Submitted April 5, 1906. (Docket No. 17.) Decided September 20, 1906.

Assumpsit by James A. Geraghty against the Washtenaw Mutual Fire-Insurance Company on a policy of in-

surance.   There was judgment for defendant on a verdict directed by the court, and plaintiff brings error.   Affirmed.

The defendant is organized under the provisions of chapter 195, 2 Comp. Laws, for the purpose of mutual insurance of the property of its members against loss by fire or damage by lightning.   Under its articles of association, it may insure—

"On farm property, both buildings and their contents, farm implements, hay, grain, wool, and other farm products, live stock, wagons, carriages, harness, farm tools, household goods, wearing apparel, provisions, musical instruments, pictures and books, being upon the premises of the insured; also detached dwellings and accompanying outbuildings and their contents, belonging to members of this company; also country schoolhouses."

The language of the statute, after enumerating the classes of personal property which may be insured, is, "being upon farms as farm property."   The policies issued by the company contain the charter and by-laws of the company.   Plaintiff made written application for insurance to the amount of $600 upon property estimated to be of the value of $900, described as "farm products, farm implements, carriages and live stock on premises," and received the policy of defendant, dated November 8, 1902, in which the property insured is described as in the application.   The only location of "premises" in either instrument is by section number and township.   Plaintiff paid assessments as demanded, and on or about January 2, 1904, a fire occurred which burned and destroyed, as the plaintiff claims, property insured by this policy of insurance.   His claim was rejected by unanimous vote of the directors, for the reason that the property destroyed was not insured by the policy, but was, and the fact seems to be undisputed, the fixtures and utensils of a slaughterhouse, conducted by plaintiff, and used in the wholesale meat business in which plaintiff was engaged, and some dressed beef.   The slaughterhouse leased by plaintiff was situated on an acre of ground, also leased by him, upon

which he did not live, which was no part of any farm owned or occupied by him. There were on the premises, besides the slaughterhouse, a hogpen, wagon shed, and cattle barn.

Suit was begun on the policy in justice's court. On appeal to the circuit court, a verdict for defendant was directed for reasons stated by the trial judge as follows:

" I say to counsel and to the jury in this case this action is brought to recover for the contents of a slaughterhouse, the paraphernalia or utensils used in a slaughterhouse. I think the testimony shows, although that is not very important, that the cattle that were burned there after being slaughtered were cattle that had been purchased for the purpose of slaughtering and sale, but I do not think a loss of that kind was contemplated or provided for in this policy which provides for loss on farm products, farm implements, carriages and live stock. In my opinion the articles that were used in this case were never farm products, farm implements, or carriage or live stock. I don't think, therefore, there can be any recovery in this case under that contract.

" I am inclined to think, also, although that is not very important, that it was incumbent upon the plaintiff before he brought this suit to submit to an arbitration, but that is not very important. I should render the decision upon this proposition, that this insurance is not within the terms of this policy, and I therefore direct a verdict accordingly."

*Lee N. Brown,* for appellant.

*Frank E. Jones,* for appellee.

OSTRANDER, J. (*after stating the facts*). The question is not whether the identical property which was destroyed was insurable by defendant if it was upon a farm and used as farm property, because it is conceded that it was not upon a farm nor used in any way in connection with a farm or with farming. Kept in a building rented and used for a slaughterhouse, and a part of the paraphernalia of the business of slaughtering there carried on, it was not, in fact, property such as, under the statute referred to, the defendant had the right to insure.

Aside from a contention raised by the defendant that plaintiff should have submitted his demand to arbitrators, the case of the appellant in this court is made to rest, as we understand the brief, upon the testimony, either offered and rejected or offered and received, tending to show that the president of the company knew what property plaintiff desired to have insured and with that knowledge took the application, making it out himself, and issued the policy; that the same property, or property in the same building, had been before insured in defendant company; that after the fire the president of the company had admitted that he always knew that it was a slaughterhouse, and that by accepting the application, when the director and president of the defendant knew that the building in which the property was situated was a slaughterhouse, and receiving assessments from the plaintiff for two years, the defendant is estopped to deny liability; that, in any event, the testimony should have been submitted to the jury with proper instructions.

The testimony offered for the plaintiff does not tend to prove that he acquainted the president of the company at the time of making his application with the fact that he was carrying on at the place in question the business of slaughtering animals, or that the property which was sought to be insured was used in carrying on said business. Nor does it appear that the president of the company knew that the property which plaintiff desired to have insured was, in its use or otherwise, property not insurable by the company. But, admitting that if defendant was a stock company, authorized to carry on, generally, the business of fire insurance, the testimony was sufficient to require the case to be submitted to a jury to determine whether the company was estopped to deny liability, it does not follow that the court below committed error. Defendant is not authorized to insure any and all personal property, but to insure certain classes of personal property, "being upon farms as farm property." In form, the contract of insurance described property insurable by de-

fendant. No such property was destroyed. A contract insuring the risk which plaintiff claims was actually covered, the defendant company could not lawfully make. Plaintiff was bound to know this. He was both insurer and insured. As contract holder, he is presumed to have knowledge of the terms of his contract, and as member of the defendant company, to have knowledge of its powers.

In *Eddy* v. *Insurance Co.*, 72 Mich. 651, it appeared that the business of the company was, by the act of incorporation, restricted to certain territory. An amendment to the statute removed the territorial restrictions. The amendatory law was held to be invalid. A risk taken upon property outside the original territorial limits of business, during the time the amendatory statute was supposed to be in force, was held to be void as one which the company had no power to assume, although the company received and retained a premium of $100, and was, upon the facts, otherwise liable.

It has been held that where a statute prohibits mutual companies from insuring property not owned by members of the company, regular members were not estopped by having received the benefit of insurance to deny liability to assessment to pay losses on policies issued by the company to nonmembers of which they had no knowledge. *Corey* v. *Sherman*, 96 Iowa, 114 (32 L. R. A. 490). So, where mutual companies were forbidden to insure one not a member or to receive premiums, it was held that a policy, issued to one not a member and who paid a premium, was void, and that the company was not estopped to plead that the contract was ultra vires, since the insured was presumed to know that the contract was prohibited. *In re Assignment of Mutual Guaranty Fire-Ins. Co.*, 107 Iowa, 143. And see, generally, 21 Am. & Eng. Enc. Law (2d Ed.), pp. 267, 268.

The judgment is affirmed.

GRANT and BLAIR, JJ., concurred with OSTRANDER, J.

HOOKER, J.  I concur in the affirmance of the judgment in this cause upon the ground that by the policy itself the plaintiff was apprised of the want of authority on the part of defendant to make the contract of insurance sued upon.  *Pfister* v. *Gerwig*, 122 Ind. 568; *Mitchell* v. *Insurance Co.*, 51 Pa. 402; *Burger* v. *Insurance Co.*, 71 Pa. 422; *Susquehanna Mut. Fire-Ins. Co.* v. *Leavy*, 136 Pa. 500; *Van Loan* v. *Insurance Ass'n*, 90 N. Y. 280.

I am not satisfied to rest the denial of the application of the doctrine of estoppel upon the ground that the plaintiff was a member of the company, and that therefore he is to be treated differently in that respect than he would be were the defendant a stock company, or the policy issued by this company one which was inconsistent with such membership.  See *Farmers & Merchants' Ins. Co.* v. *Smith*, 63 Ill. 187; *Illinois Fire-Ins. Co.* v. *Stanton*, 57 Ill. 354; *Given* v. *Rettew*, 162 Pa. 638; *In re Assignment of Mutual Guaranty Fire-Ins. Co.*, 107 Iowa, 143; *In re Minneapolis Mut. Fire-Ins. Co.*, 49 Minn. 291; *Osius* v. *O'Dwyer*, 127 Mich. 244.

To hold that one dealing with a corporation must know the limit of its power to contract in all cases, upon the ground that it will be presumed to know the law, would seem to be fatal to all cases of estoppel when ultra vires is set up as a defense.  While there is a conflict upon this doctrine between the Federal cases and those decided by most of the State courts, this court has followed the latter, and it is now too late to question the doctrine.  That this is the general doctrine is established by many authorities. See 29 Am. & Eng. Enc. Law (2d Ed.), pp. 50, 51, and cases cited.  The cases of *Eddy* v. *Insurance Co.*, 72 Mich. 651, and *Corey* v. *Sherman*, 96 Iowa, 114 (32 L. R. A. 490), and *In re Assignment of Mutual Guaranty Fire-Ins. Co.*, supra, are distinguishable for the reason that in each the statute under which the company was organized contained an express prohibition against the making of the

contract. In the latter case the distinction is pointed out, and the statement made that—

" Were it not for the statutes prohibiting mutual companies organized under section 1160 (Code 1873) from taking premiums and from doing business on the stock plan, we would be inclined to hold that, as the corporation had accepted and used the premium paid for the policy in suit, it should be estopped from pleading ultra vires as a defense. Indeed, the modern authorities seem to sustain that rule. *Thompson* v. *Lambert*, 44 Iowa, 239. See *Denver Fire-Ins. Co.* v. *McClelland*, 9 Colo. 11; *Matt* v. *Protective Society*, 70 Iowa, 455; 2 Beach, Private Corporations, § 423, and cases cited."

In our own case of *Eddy* v. *Insurance Co.*, supra, the express prohibition is found, the act expressly limiting the issue of policies to three contiguous counties. There are many cases since decided, which are at variance with this case, and which, of necessity, overrule it if this distinction be disregarded. Thus, in *Fourth Nat. Bank of Grand Rapids* v. *Olney*, 63 Mich. 58, a mining corporation was held to be estopped from denying the authority to contract. The opinion was written by the same justice who a short time afterwards wrote the opinion in the *Eddy Case*, and it is improbable that he overlooked the earlier case, or the distinction referred to which is essential to consistency. The case of *Day* v. *Buggy Co.*, 57 Mich. 146, recognizes a difference between a contract which has been performed and one which has not, and is cited by Mr. Justice SHERWOOD in the case of *Cleveland Paper Co.* v. *Courier Co.*, 67 Mich. 158, in support of an estoppel. The plea of ultra vires was overridden in the case of *Carson City Sav. Bank* v. *Elevator Co.*, 90 Mich. 554, and in *Dewey* v. *Railway Co.*, 91 Mich. 351, while in *Coit* v. *City of Grand Rapids*, 115 Mich. 494, a majority of the court applied the doctrine to a municipal corporation, while Mr. Justice MONTGOMERY, who dissented as to the application to a city, used the following language:

"The settled rule is that executed contracts of private corporations, not unlawful, but ultra vires, will be treated as binding upon the corporation. *Carson City Sav. Bank* v. *Elevator Co.*, 90 Mich. 550; *Dewey* v. *Railway Co.*, 91 Mich. 351. But the weight of authority is opposed to the contention that a municipal corporation can estop itself from asserting a want of power to enter into an engagement which is in fact ultra vires."

The rule was again applied in *Rehberg* v. *Surety Co.*, 131 Mich. 135. There is as much reason why this doctrine should be applied to the contracts of insurance companies as to those of other corporations, and mutual insurance companies should be equally subject to the rule, unless it be where its contract is with one who is, or by the very terms of the contract becomes, a member. There it has been said that such person sustains a double relation to the company, and some cases attach significance to it, from which we may infer that it would avoid an estoppel.

In the case of *In re Assignment of Mutual Guaranty Fire-Ins. Co.*, 107 Iowa, 143, the assured was not a member, and therefore that case throws no light upon this question.

There are many cases where the courts seem to have disregarded the rule that every one is presumed to know the law, and apparently rested their decisions upon the strong equity in favor of one who has faithfully carried out his agreement, as against one who would retain the consideration and deny liability upon the ground of ultra vires. 29 Am. & Eng. Enc. Law (2d Ed.), pp. 50–54*b*; and note 1; *Holt* v. *Winfield Bank*, 25 Fed. 812; *Tennessee Ice Co.* v. *Raine*, 107 Tenn. 151; *Peterson* v. *Saving Ass'n*, 124 Mich. 573. I am not convinced that a member of a mutual insurance company or other corporation is precluded, by the mere fact of his membership, from asserting an estoppel as against the company. *Willcuts* v. *Insurance Co.*, 81 Ind. 307; *Wallace* v. *Mystic Circle*, 121 Mich. 263. In the case of *Russell* v. *Insurance Co.*, 80 Mich. 407, an estoppel was recognized

as an answer to a claim of ultra vires. See, also, *Carson City Sav. Bank* v. *Elevator Co.*, 90 Mich. 554; *Osius* v. *O'Dwyer*, 127 Mich. 244. Some building and loan cases have an analogy to the question. *Peterson* v. *Saving Ass'n*, 124 Mich. 573, 580, and cases cited.

In some of the cases cited the mere fact of membership appears to be conclusive of the question of notice, but in this case the statute and by-laws are printed upon the policy, and nothing implies a want of knowledge of them, if that would make a difference, which we do not intend to imply. Whether the plaintiff might, in a proper action, recover the amount paid by him to the company, is a question not arising upon this record.

MONTGOMERY, J. I concur in the result on the first point above stated.