EDWARD J. BISSELL, RECEIVER, ETC., v. FRANCIS HEATH.

*Banks and banking—Individual liability of stockholders—Constitutional law—Powers of receiver.*

1. A banking corporation can waive the formality of an assignment by a stockholder of his stock, and, having done so, the purchaser, to whom a certificate is issued, cannot, after receiving dividends thereon for several years, escape his statutory liability to depositors on the ground that he never became a legal stockholder for want of such assignment.[1]

2. Nor can he, after receiving such dividends, which he retains, and permitting the depositors of the bank to rely upon his apparent ownership of the stock, repudiate his liability on the ground that he was induced to purchase the stock through fraudulent representations as to the financial condition of the bank.

3. The general banking law of 1887 (Act No. 205) is not unconstitutional on the grounds:

   *a*—That its title is double.

   *b*—That it attempts to confer upon the receiver appointed to wind up the affairs of an insolvent bank judicial power to adjudicate claims to be paid in the course of liquidation.

   *c*—That the provisions creating the liability of stockholders of existing corporations impair the pre-existing contract between the stockholder and the corporation.

4. Section 56, which provides that, upon the appointment of a receiver for an insolvent bank, the Commissioner of the Banking Department shall cause notice to be given, by advertising in such newspapers as he may direct, once in each week for twelve successive weeks, calling on all persons who may have claims against the bank to present the same to the receiver, and make legal proof thereof, does not prevent the receiver from hearing and allowing claims before the expiration of the twelve weeks.

Error to Oakland. (Moore, J.) Argued October 27, 1893. Decided January 26, 1894.

---

[1] See *McLean v. Medicine Co.*, 96 Mich. 479, as to transfer of stock, etc.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Atkinson & Carpenter,* for appellant.

*Edward J. Bissell,* for plaintiff.

MONTGOMERY, J. The Milford State Bank was organized October 21, 1886, and continued in business until the 15th of September, 1891, at which date a bill was filed, under the general banking law of the State (Act No. 205, Laws of 1887), to wind up the affairs of the corporation. Plaintiff was appointed receiver under said act. Claims were filed with, and approved by, him, aggregating $104,-287.81 due depositors, and $4,801.75 due other creditors, besides certain contingent liabilities. Defendant was charged with liability as a stockholder under the provisions of section 46 of the act of 1887, which provides that—

" The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, for the benefit of the depositors in said bank to the amount of their stock at the par value thereof, in addition to the said stock. * * * Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver, or other officer succeeding to the legal rights of said bank."

1. It is claimed by the defendant and appellant that he was not a stockholder. It appears by the record that, about the time the bank was organized, the defendant negotiated with one Solon H. Wilhelm, who became cashier of the bank, for the purchase of stock. It appeared by the stock ledger that under date of January 3, 1887, there was issued to defendant a certificate of stock, the stock ledger stating that the stock was transferred from subscription of S. S. W. It further appears that a certificate was in fact issued to the defendant, and that he received dividends for several years. It is urged that the only way

in which defendant, not being an original subscriber to the capital stock, could become a stockholder, was by securing a transfer of some of the stock subscribed for by others, and that no formal transfer appears upon the bank books, and hence that he never legally became a stockholder. The answer to this is that the evidence of the transfer was sufficient to satisfy the corporators. The stock was in fact issued, and the books of the company showed it sufficiently. *Grand Rapids Savings Bank v. Warren*, 52 Mich. 557. The corporation was bound by the issue of stock. It could waive the formality of any assignment by S. S. W., and, having done so, could not thereafter deny defendant's rights on the ground that he had failed to produce evidence of an assignment from an original subscriber to the capital stock. Mor. Priv. Corp. § 844.

2. It is next contended that, if the defendant ever legally assumed the relation of stockholder, he was induced to enter into the contract by fraud. The State bank was the successor in business of a national bank having the same officers, and it is claimed, in effect, that the evidence tends to show that the officers unloaded worthless securities belonging to the national bank upon the new organization, and received stock for the same; that, out of the nominal capital stock of $50,000, only a little more than $10,000 was paid in in cash; that it was represented to the defendant, at the time he became a stockholder, that the bank was a paying institution, and would earn semi-annual dividends of 4 per cent.; that, as a matter of fact, the acceptance of the worthless securities had at this time left the bank with an impaired capital; and that the representations made to defendant were known to be untrue. It is conceded by appellant's counsel that there are authorities which maintain that it is not open to a stockholder, when the rights of creditors have intervened, to assert the claim that he was induced by fraud to become a stockholder;

but it is insisted that the true rule is that asserted by Lord Cairns in *Smith's Case*, 2 Ch. App. 604, that it is one of the risks which creditors are liable to that it may turn out that some person whose name appears as a shareholder on the list has a right to have his name taken from the list. In the case cited, however, the action was taken before any steps had been taken to wind up the affairs of the corporation under the winding-up act.

In *Stone v. Bank*, 3 C. P. Div. 282, it was held that where the corporation has gone into liquidation, and is proceeding, under the winding-up act, to make calls to satisfy claims of creditors, it is too late for one who has, up to that time, allowed his name to appear as a stockholder, to avoid liability on the ground that his subscription was obtained by fraud.

The question was touched upon by this Court in *Duffield v. Wire & Iron Works*, 64 Mich. 293. In that case, plaintiff had been induced to become a stockholder by fraud, and, on discovery of the fraud, tendered back the shares and dividends received, and brought an action against the corporation before any assignment was made for the benefit of creditors. On the question of the plaintiff's right to recover, under the circumstances, the Court was evenly divided, Justices CHAMPLIN and MORSE being of the opinion that the plaintiff could not rescind the contract after the rights of creditors had intervened, even though no steps had actually been taken to wind up the affairs of the corporation. Chief Justice CAMPBELL and Mr. Justice SHERWOOD were of the opposite opinion. We do not deem it necessary to decide which of the two opinions we would follow in a case presenting the same state of facts, as we think that, even under the doctrine of Justice CAMPBELL's opinion, the defendant in this case cannot be relieved. Justice CAMPBELL lays stress upon the fact that, under the statute relating to manufacturing

corporations, the stockholders are not personally liable to contribute beyond what will pay up for their stock, and that creditors cannot enforce any right against fully-paid stock. But such is not the case with corporations organized under the banking law. It is apparent that Justice CAMPBELL recognized the doctrine of *Stone v. Bank, supra.* We think the defendant in this case cannot, after having permitted the depositors of the bank to rely upon his apparent ownership of this stock, and after having received dividends upon the stock for years, which he has not tendered back, be heard now to repudiate his liability. Mor. Priv. Corp. § 840; *Chubb v. Upton,* 95 U. S. 665; Cook, Stock & S. §§ 163, 164.

3. It is contended that the general banking act of 1887 is unconstitutional, for the reasons:

(1). That the title is double.
(2). That it attempts to confer upon the receiver the judicial power to adjudicate claims to be paid in the course of liquidation.
(3). That, as applied to the present case, it impairs the obligation of contracts made by the shareholder before its passage, by imposing a liability not before that time existing.

These questions will be considered in the order adopted by counsel.

*First.* The title of the act is—

"An act to revise the laws authorizing the business of banking, and to establish a banking department for the supervision of such business."

Is the title valid under article 4, § 20, of the Constitution, which provides that no law shall embrace more than one object, which shall be expressed in its title? It is suggested that the title expresses two objects, which might very well be the subjects of separate acts. It may be true, of any comprehensive statute, that it might be subdivided, and several laws *in pari materia* enacted in

place of one; but it does not follow that an act which has but one general object is in conflict with the constitutional provision. As is stated in Cooley's Constitutional Limitations (6th ed. page 175):

"There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted."

This Court has frequently expressed similar views. See *People v. Mahaney*, 13 Mich. 481; *Kurtz v. People*, 33 Id. 279; *Attorney General v. Amos*, 60 Id. 372; *Wardle v. Cummings*, 86 Id. 395. *Davis v. Woolnough*, 9 Iowa, 104, is directly in point, and sustains the ruling of the circuit judge.

*Second.* Section 57·of the banking act provides that the receiver shall from time to time make ratable dividends of the moneys realized or collected by him on all such claims as may have been proved to his satisfaction, or adjudicated in a court of competent jurisdiction. This provision, it is said, empowers the receiver to adjudicate claims, and gives his adjudication the force of a judicial decision; and it is urged that it is therefore in conflict with the provision of section 1, art. 6, of the Constitution, which reads:

"The judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace."

This provision was construed by this Court in *Shurbun v. Hooper*, 40 Mich. 503, and *Streeter v. Paton*, 7 Id. 348. In *Streeter v. Paton* it was said:

"By 'courts,' as the word is used in the Constitution, we understand permanent organizations for the administration of justice, and not those special tribunals provided for by law, that are occasionally called into existence by particular exigencies, and that cease to exist with such exigencies."

In *Shurbun v. Hooper* it was held that the statute providing for adjudication of claims against the estate of a deceased person before commissioners was not in conflict with this provision. Such a statute is not to be distinguished in principle from the one under consideration. If a special tribunal may be created to determine claims against the estate of a deceased individual, why may not such a tribunal be created to determine claims against a defunct corporation, subject, as the power conferred by the statute doubtless is, to a review by the court making the appointment? See *Underwood v. McDuffee*, 15 Mich. 361; *Kennedy v. Gibson*, 8 Wall. 498; *Young v. Wempe*, 46 Fed. Rep. 354; *Citizens' Savings Bank v. Circuit Judge*, 98 Mich. 173.

*Third.* It is contended that the provision of the act of 1887 creating the liability of stockholders is, so far as it attempts to fix that liability upon existing corporations, unconstitutional, for the reason that it impairs a pre-existing contract between the stockholder and the corporation. In this connection it is asserted that the amendment to the banking law adopted by the Legislature of 1871 is inoperative, for the reason that it was not ratified by a vote of the people. Section 2 of article 15 of the Constitution provides that no general banking law shall have effect until the same shall, after its passage, be submitted to a vote of the electors of the State. We find it unnecessary to determine whether this provision of the Constitution applies to amendments to general banking laws, as we think that, if it be assumed that the attempt to create a personal liability on the part of stockholders by the act of 1871 was ineffectual, still the provisions of the act of 1887, fixing the personal liability of stockholders in existing banks, must be upheld. The Constitution (article 15, § 1) provides, in effect, that all laws passed providing for the formation of corporations under general laws may be amended, altered, or repealed. Under this reservation of

power it is not an unwarranted or unconstitutional invasion of private rights to provide by subsequent legislation that, as to future contracts of the corporation, the stockholders shall be subject to a further liability. Instances of legislation of this character are not rare, and the question herein involved has been passed upon by numerous courts of last resort. The leading case is *In re Lee Bank*, reported in 21 N. Y. 9. In that case it was distinctly held that, under such a reserved power to alter or amend, the legislature might provide that the stockholder should, as to future debts contracted by the corporation, become liable to the amount of his capital stock, in addition to his paid subscription. Mr. Justice Denio, speaking for the court, disposed of the contention of defendant as follows:

"It is said that the corporation could not, by any act or omission of its own, implicate its stockholders in a liability which they had not consented to assume, and which, on the contrary, they had declared they would not incur. But they had voluntarily consented to become stockholders upon the conditions held out by the general banking law. One of these conditions was that the legislature might amend and alter the act, and in that way change and modify the constitution of the corporation. A change under this reservation to alter might render their investment more or less profitable, and their position more or less hazardous. Whatever peril it entailed they consented to assume."

This case was affirmed on appeal to the Supreme Court of the United States, and is reported under the title of *Sherman v. Smith*, 1 Black, 587.

In *Stanley v. Stanley*, 26 Me. 196, the act creating the corporation was passed in 1833. A statute passed in 1839, making the stockholders personally liable for the debts of the corporation thereafter contracted, was held valid.

In *Gardner v. Insurance Co.*, 9 R. I. 194, 199, the question was distinctly raised, and the court reached the same

conclusion as that stated in *Re Lee Bank*, 21 N. Y. 9. The court say:

" The legislature have reserved the power at any time to alter or repeal the charter, or any of its provisions. The corporators accepted it upon this condition, and agreed that its provisions might be changed; and every purchaser of stock in this company has assented to these terms, and has agreed to hold his shares subject to this liability to change."

In *Gray v. Coffin*, 9 Cush. 192, in considering the effect of an act passed subsequently to the formation of a corporation, Chief Justice Shaw, at page 200, said:

" This act was general in its nature, extended to members of all corporations, providing to what extent they should be liable to the claims of creditors, and all persons dealing with and becoming creditors of any corporation. It was future and prospective in its operation, regulating the rights of debtor and creditor as they should afterwards arise, expressly securing any right acquired by any person against a holder of stock in any corporation by force of existing laws. It had no tendency to impair, or in any way affect or modify, any power, privilege, or immunity pertaining to the franchise of any corporation, and therefore seems to be within the just limits of legislative power."

The case of *Ireland v. Turnpike Co.*, 19 Ohio St. 369, is cited by counsel as asserting a contrary doctrine. We do not find, from an examination of that case, that the effect of a reservation of the power to alter, amend, or repeal a charter was considered.

It is contended that *City of Detroit v. Plank-Road Co.*, 43 Mich. 140, is inconsistent with the plaintiff's contention, and with the cases above referred to. We do not so construe the opinion of Mr. Justice COOLEY in that case. That case involved the question of whether vested property rights might be taken from the corporation without condemnation by virtue of the reserved power to alter or amend. The question, as here presented, relates to the

power to affect, by amendatory legislation, the rights and liabilities of corporations and stockholders as to future contracts and undertakings.

4. It is claimed that the plaintiff has not shown himself entitled to recover, for the reason that there was no proper allowance of the claims by the receiver; that the notice required to be given under section 56, calling upon creditors to prove their claims, was irregular and insufficient, and that, therefore, the receiver had no jurisdiction to pass upon the claims. This contention can only be sound if it be held that the receiver can hear no claims until after the expiration of the full 12 weeks from the time of the first publication. We do not think the section in question is open to this interpretation. It was not intended to postpone action for this time. On the contrary, the provision as to notice is for the benefit of the creditors, and where, as in this case, a sufficient number of them act upon brief notice to show a liability upon the part of defendant for the full amount of his stock, he can safely trust the equity courts to protect creditors of the bank.

We have considered all the points relied upon, and find no error in the record.

The judgment will be affirmed, with costs.

The other Justices concurred.