## OSIUS v. O'DWYER.

MUTUAL FIRE INSURANCE — STANDARD POLICY — CONSTRUCTION — MEMBERS—LIABILITY FOR ASSESSMENTS.

Defendants applied to an insurance agent for an ordinary policy of fire insurance, and received a Michigan standard policy, paying the regular premium therefor. The policy was issued by a mutual company. It contained the usual provision that, if made by such a company, any special regulations applicable to its organization should form a part of the policy, as they might be written or printed thereon or attached thereto, and also a further provision that the articles of association and by-laws of the company should form a part of the policy, and be resorted to in order to determine the rights and obligations of the respective parties; but no special provisions or regulations were indorsed or appended. *Held*, that the policy was an ordinary contract of insurance, and did not make defendants members of the company, and liable for assessments.

Error to Wayne; Carpenter, J. Submitted January 10, 1901. Decided July 2, 1901.

*Assumpsit* by Adolph E. C. Osius, receiver of the Protective Fire Association of Detroit, against James G. O'Dwyer and Edward F. Ward, to recover the amount of an assessment. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Tarsney, Hayes, Lawson & Fitzpatrick* (*William H. McBryan*, of counsel), for appellant.

*William Rolston Brown* (*Alfred Lucking*, of counsel), for appellees.

LONG, J.    This action was commenced in justice's court.    Plaintiff filed a bill of particulars, as follows:

"To defendants' *pro rata* assessment as members of the Protective Fire Association of Detroit, Michigan, insolvent, for losses occurring during the period of their membership, as per policy No. 25,002, dated April 5, 1897, and expiring April 5, 1898, for $2,500, and expenses of the receivership, $75."

Defendants pleaded orally the general issue, with notice that the contract of insurance with the Protective Fire Association was brought about by the misrepresentations of the agent of said company, one Wood, that said company was not a mutual company, but a regular stock insurance company, which representations were untrue, were believed by said defendants, and relied upon by them in entering into said contract of insurance; that said defendants paid the cash premium required of them by said company upon the express representations of said Wood that they would in no way be held further liable by said company. The cause was tried in justice's court, and, upon judgment there, appealed to the circuit court, where, upon a trial before a jury, a verdict was returned, under the direction of the court, in favor of defendants. Plaintiff brings error.

The court charged the jury as follows:

"In any view that may be taken of this case, it is to be

disposed of by the court, because, if the plaintiff is right, the plaintiff is entitled to a verdict as a matter of law; and, if the defendant is, the defendant is. There is no dispute of facts which I regard, or that I think counsel seriously regard, as disposing of any material issue. The defendants insist that a verdict should be directed in their favor on several grounds, which, for the purpose of getting them on the record, I will state:

" (1) That the plaintiff was not appointed receiver by the proper judicial tribunal, his appointment having been made by the court of chancery, and not by the court of law.

" (2) This case having been commenced in justice's court, it should be treated here the same as it was to have been treated there, and it is contended that the justice's court has no jurisdiction of such matters.

" (3) It is objected that the proceedings in this case do not properly describe the plaintiff; that he is described simply as receiver, and it is not stated that he is receiver of the Protective Fire Association. ·

" (4) It is objected that recovery cannot be had under the common counts in *assumpsit*.

" (5) It is objected that the defendants never became members of the Protective Fire Association.

" I shall not pass upon any of the first four of the objections, because, in my judgment, the fifth is decisive. I prefer to rest the case upon that proposition, because it forever ends litigation, if I am right. If the defendants should prevail upon any of the first four contentions, it would simply result in other litigation. Now, the question is whether, under the facts of this case, the defendants ever became members of the Protective Fire Association. If they did become members, even though they were induced to become members by fraud, they would be liable in this case, because the Supreme Court has decided in the case of *Bissell* v. *Heath*, 98 Mich. 472 (57 N. W. 585), that fraud will not be permitted to be urged as a defense where the rights of third persons have intervened, as they have in this case. On the other hand, if the legal effect of the contract made by the defendants did not make them members, that principle can have no application. If, for instance, the defendants had agreed to rent a building, to put an extreme case, to the plaintiff association, obviously it could not be urged that the effect of that contract made them members. Of course, that is not the

case before us. This case is much more difficult than that.

"It appears that on the 5th day of April, 1897, the policy which I hold in my hand, issued by the Protective Fire Association, was delivered to the defendants, and the question is whether the effect of that delivery ever made them members of the association. The policy itself purports to be, and is, the Michigan standard policy. It is precisely such a policy as an insurance company issues to an insured when there is no other obligation upon his part than to pay the premium. It provides, among other things, that the policy should be canceled at any time at the request of the insured, or by the association by giving five days' notice. If the policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion, on surrender of this policy or last renewal, shall be returned, this association retaining the customary short rate. Obviously, the legal construction to be given to this contract is that the obligation of the insured is to pay his premium, and, when he has paid his premium, that ends his liability. Now, the question is whether any other construction is permissible. Very near the close of the policy we find this statement:

"'If this policy be made by a mutual or other company having special regulations lawfully applicable to its organization, * * * such regulations shall apply to and form a part of this policy, as the same may be written or printed upon, attached, or appended hereto.'

"So that any one reading this policy, and observing that, would have a right to suppose that, if this policy were issued by a mutual company, any regulations of that company affecting that contract would be written or printed upon it or appended to it; and their not being written upon it or appended to it would be convincing to me that it was not so issued by a mutual company having such regulations.

"My attention has been called to this language, which is in addition to the language usually contained in a standard policy:

"'The articles of association and by-laws of this association are hereby declared to be and form a part of this policy, and are to be resorted to in order to determine the rights and obligations of the several parties hereto.'

"Now, it is urged that those articles and by-laws, which are not referred to in any other way than by this language, do form a part of this policy. Granting that it did, what follows? As I have stated, the legal construction that must be given to this policy is that of creating an insurance between the company on the one hand and an outsider on the other, and with no further obligations. Now, if he were to look to those articles of association or to the by-laws, he would have been informed of what? At most, of this: That the company had not any right to insure an outsider; because, as I have stated, the legal effect of this contract did not make him a member. So that, without looking to the fraud that took place at the time, if there was a fraud, without resorting to anything except the document itself, it seems to me, I am bound to say, that the contract which was made, and the legal construction which must be given to that contract, was that the ordinary contract of insurance was effected, and not a contract by which the insured became members. It results, therefore, that the principle of *Bissell* v. *Heath*, 98 Mich. 472 (57 N. W. 585), to which reference has been made, has no application, and that there was no contract in this case by which an obligation to pay assessments arose; and it also results that there can be no verdict against the defendants, and your verdict should be, and I direct you to render it, in favor of the defendants, and against the plaintiff."

We think the court was not in error in this charge. It appears that the application was not made by the defendants nor by their authority. It was made and signed by the agent of the company. The contract of insurance, therefore, is contained in the policy. Mr. O'Dwyer bargained for and paid for a Michigan standard policy, and his stipulation was for fire insurance of the usual and ordinary kind, and he received such a policy, paying therefor the usual price. The court below held that the policy delivered was, by its terms, an ordinary contract of insurance, and not a contract by which the defendants became members of the company. In this the court was not in error.

Judgment must be affirmed.

The other Justices concurred.