ELY *v.* OAKLAND CIRCUIT JUDGE.

1. INSURANCE — MUTUAL COMPANIES — STATUTES — AUTHORITY TO
   ISSUE POLICIES — FIRE INSURANCE.
   A mutual fire insurance company organized under chapter 195,
   2 Comp. Laws, whose charter contemplates the issuance of
   policies, not mutual, for a cash premium, has no power to issue
   such policies, which are expressly prohibited by statute. 2
   Comp. Laws, § 7256.

2. SAME — ASSESSMENTS — INSOLVENCY — RECEIVERS.
   Policies of such mutual insurance company in the standard
   form, containing an additional clause declaring the policy
   subject to the statutory assessment liability, although the
   policy provides for a fixed premium, are subject to assess-
   ment as mutual policies, although those issued without the
   additional clause are void.

3. SAME — MARSHALING ASSETS — INSOLVENCY OF FIRE INSURANCE
   COMPANIES.
   The assessment made by the receiver after insolvency should
   be determined in amount by including, as a liability to be
   met, unearned premiums of all outstanding cash premium
   policies and all valid loss claims.

4. SAME — VOID POLICIES — REMEDIES — ILLEGALITY OF CONTRACTS
   — FARM POLICIES — FIRE INSURANCE.
   Policies of insurance on farm property issued *ultra vires* in
   violation of statute are illegal and void, and the holders are
   equitably entitled to a return of the unearned premiums paid.

5. SAME — SET-OFF AND RECOUPMENT — ASSESSMENT OF MUTUAL POL-
   ICY HOLDERS — DEFENSES.
   Unearned premiums on cash premium policies subject to as-
   sessment may be set off by the holders against *pro rata* as-
   sessments by the receiver of the insurer.

6. SAME — RECEIVERS — ASSESSMENTS.
   An assessment to pay liabilities of an insolvent mutual fire in-
   surance company in a receiver's charge, should be based on
   the number and classes of policies, the amount of unearned
   premiums due on them, the amount required to pay losses
   under valid insurance, and the costs and expenses of admin-
   istration.

7. SAME—COSTS—RECEIVERS.
   The costs of an application of a receiver to the court for instruction may be paid out of the assets of the insolvent.

Mandamus by Francis G. Ely, receiver of the Citizens' Mutual Fire Insurance Co., of Holly, Michigan, to compel George W. Smith, circuit judge of Oakland county, to enter an order for an assessment upon the members of said company for the payment of losses and expenses. Submitted February 8, 1910. (Calendar No. 23,658.) Writ granted March 19, 1910. Rehearing granted May 25, 1910. Resubmitted on briefs July 1, 1910. Former opinion modified September 28, 1910.

*Kleber P. Rockwell* and *Henry M. Zimmermann,* for relator.

*Harry E. Hooker, J. Arthur Tillson,* and *Frank L. Covert,* for respondent.

*Franz C. Kuhn,* Attorney General (*Arthur P. Hicks,* of counsel), *amicus curiæ.*

STONE, J. The petition for mandamus against the circuit judge in this case is made by Francis G. Ely, receiver, and represents:

(1) That he was appointed receiver of the Citizens' Mutual Fire Insurance Company of Holly, Mich., by the circuit court of Oakland county on December 28, 1908, and gave the required bond.

(2) That said company is a corporation organized under Act No. 82 of the Laws of 1873, as amended in 1895 (2 Comp. Laws, chap. 195). That said company, availing itself of the provisions of said amendment, amended its charter January 8, 1896, and that said company has been engaged in the business of insuring property against loss by fire since its incorporation in April, 1874.

(3) That said company did a general fire insurance business in the State of Michigan, having at risk at the date of suspension insurance amounting to $5,064,139, with approximately 6,000 policy holders, scattered throughout the State of Michigan.

(4) That three forms of policies were written by said company; the usual mutual policy providing for assessments, and written on application made to the company, in writing by the insured. The second class of policies known as "cash premium policies," were written for one, two, and three years, for which in every instance a cash premium was paid in advance; the premium charged varying according to the character of the property insured. The policies of this class were labeled "Michigan standard form," and were in fact Michigan standard form, except that at the bottom of the policy was printed a clause in the following language, which is worded differently from the language in the ordinary Michigan standard form policy:

"This policy is subject to the conditions of the charter of this company, and of the act under which the company is organized, as to liability of members to assessment for losses incurred."

The third class of policies were also cash premium policies, written for one, two, and three years, for which in every instance a cash premium was paid in advance; which were in language and form exactly like those in the second class above described, except the assessment clause above quoted was wholly omitted from the policy.

(5) That said company is a mutual company entirely, and carried no reserve fund to meet extraordinary losses or liabilities.

(6) That during the month of October, 1908, serious fires occurred in the northeastern part of the State of Michigan, burning whole areas of territory, and some towns entirely.

(7) That claims for losses amounting to $19,589.90, or thereabouts, are outstanding and unpaid against said company.

(8) That of said claims outstanding and unpaid against said company for fire losses, $12,071.13 are due on farm risks, which it appears by the terms of the statute, under which said company was doing business, were prohibited, and which the said company, in consequence, had no legal right to take.

(9) That claims for unearned premiums amounting to $20,000, or thereabouts, largely on policies terminated on the appointment of receiver, have been filed for allowance.

(10) That there were no funds available with which to meet the outstanding and unpaid obligations of said com-

pany, on account of said fire losses, unearned premiums claimed, if the latter could be legally allowed, or to meet the usual necessary expense incident to the receivership and winding up of said corporation, and neither will there be unless an assessment on the members and persons insured in said company can be made to meet the same.

(11) That soon after the appointment of the receiver, as aforesaid, he petitioned the said circuit court for instructions, as to whether an assessment could lawfully be made against all of the policy holders irrespective of the particular form of the policy held in said company, and as to the amount of the proposed assessment, the manner of levying the same, whether upon both the cash premium and mutual holders alike, or otherwise, and for such further instruction, direction, and authority as the court might deem necessary and proper to grant.

(12) That petitioner, at the time of filing his said petition, also filed another petition praying for the instruction of said court whether, as receiver, he should allow unearned premiums in offset to the assessment by him proposed to be made on the members and persons insured in said company; that the court determine whether the members and persons insured in said company were entitled to unearned premiums on the cancellation of their policies, either before or after said appointment of receiver, and, if to be allowed in either or both cases, how, and in what manner the same ought to be paid; what proceedings, if any, said receiver should take with reference to the premiums due on policies returned as "refused," "canceled," etc., after his said appointment; also praying for such further instruction, direction, and authority in the premises as to said court might seem proper.

(13) That orders were made by said court on the filing of said petitions, requiring notices to be given to all members and persons insured, fixing a time within which objections might be filed by persons interested therein, and a time for hearing said objections.

(14) That proof of service of notice in accordance with said orders was made and filed by petitioner; numerous objections to said proposed assessment were filed by members, and persons insured in said company; certain of the cash premium policy holders objecting to an assessment, yet claiming unearned premiums.

(15) Testimony was taken and hearing had on said objections, in said court, disclosing the character and num-

ber of the policies issued, the losses suffered, and the necessity for the appointment of a receiver for said company, a transcript of which, with the findings of the court, are attached to said petition.

(16) That, after said hearing, a further petition was filed in said circuit court by certain mutual policy holders, praying for a further disclosure on the part of said receiver, as to the nature and character of the property insured by said company, on which losses occurred, and on account of which said receiver desired to levy an assessment. Hearing on said petition was also had, which disclosed that losses aggregating the sum stated in the eighth paragraph were on farm risks; objection being made to any assessment to cover those losses for the reasons above stated.

(17) That on June 26, 1909, orders were made by said circuit court as follows:

(a) The prayer of the first petition was denied, and the receiver was instructed to make no assessment for any purpose whatsoever; said order being made in anticipation of these proceedings to obtain a ruling of this court as to the status of the policy holders in each class, as to the question of membership in said company.

(b) That no assessment for return premiums be made. That the members and persons insured are not entitled thereto in the opinion of said circuit court.

(c) That no assessment be made to pay losses on risks on farm property, declaring said risks void.

Said receiver prays for mandamus directing said circuit court to order:

(1) An assessment on all members and persons insured in said company, excepting those only who held, or now hold, policies on farm property, to pay losses and expenses.

(2) That the order of the circuit court, holding that no assessment for return premiums be made, be affirmed.

(3) That the order of said circuit court holding that policies issued on farm property are void, and that no assessment for the payment of losses on such risks be made, be affirmed.

(4) And for such further relief by mandamus as justice may require.

The answer of the respondent, the circuit judge, shows that the facts stated in said petition are true.

Section 17 of the act under which said company was organized provides for the appointment of a receiver, and it is made his duty to ascertain the amount due from said company on property insured, and to at once proceed to assess upon all of the members and persons insured in such company such sums of money as will in the aggregate be sufficient to pay all the losses and liabilities of said company, together with the services and expenses of such receiver, according and in proportion to the amount of their insurance or interest in such company.

The charter of the company clearly contemplates the issuing of cash premium policies. It provides that no risk, except dwelling house risks, shall be written on the straight mutual plan; that all cash premium business shall be written at the full tariff rate, as adopted by the State board of underwriters; the percentage of the tariff rate the company shall be netted, etc.; that the company may take cash premiums, or notes from the assured, which shall also be the basis for future assessments; that premium notes shall not be transferable, and shall not exceed five times the cash premium paid in one year; that once in each year the directors shall, if deemed necessary, make an assessment on all policies insured in the company, to raise money to liquidate the losses and incidental expenses of the company; that each member insured on the assessment plan shall be notified of any assessment made against his policy, etc.

This clearly implies that there may be members who are not insured on the assessment plan. We think there is both by the statute and the charter of the company a recognition of the intention and right of the company to insure on the cash premium plan. The doctrine of *ultra vires* cannot be applied to contracts not prohibited, either expressly or by necessary implication in the statute. *Day v. Buggy Co.*, 57 Mich. 147 (23 N. W. 628, 58 Am. Rep. 352); *Carson City Sav. Bank v. Elevator Co.*, 90 Mich. 550 (51 N. W. 641, 30 Am. St. Rep. 454); *Dewey v. Railway Co.*, 91 Mich. 351 (51 N. W. 1063); *Coit v.*

*City of Grand Rapids*, 115 Mich. 493 (73 N. W. 811); *Rehberg* v. *Surety Co.*, 131 Mich. 135 (91 N. W. 132); *Spier* v. *City of Kalamazoo*, 138 Mich. 653 (101 N. W. 846); *Peterson* v. *City of Ionia*, 152 Mich. 678 (116 N. W. 562).

So while the cash premium policy plan is not expressly authorized by the statute, it is not prohibited, and this fact, coupled with the fact that it is authorized by the charter and by-laws of the company, makes it a valid and binding obligation upon the company. This brings us to an important question in the case: Is the cash premium policy subject to assessment?

It is urged that this question is answered in the negative, and the question foreclosed, by the decision of this court in *Osius* v. *O'Dwyer*, 127 Mich. 244 (86 N. W. 831). That was a case where the receiver of a mutual fire insurance company sued a policy holder for an assessment. It was objected that defendants never became members of the company, and that objection was sustained. We have examined with care the record in that case. The company was organized under the same statute as was this company. The charter differed in many essential respects from the charter of this company. The contract or policy in that company differed from the cash premium policy containing the assessment liability clause, issued by this company, in the following particulars: It appears clearly that the policy in this case was issued by a mutual company (a point upon which we do not lay much stress). The policy referred to issued by this company contained the following clause, the substance of which did not appear in the policy in that case, viz.:

"*This policy* is subject to the conditions of the charter of this company, and of the act under which the company is organized *as to liability of members to assessments for losses incurred.*"

The following clause contained in the policy in the *Osius Case*, viz.:

"If this policy be made by a mutual or other company having special regulations lawfully applicable to its organization,  *   *   *  such regulations shall apply to and form a part of this policy, as the same may be written or printed upon, attached, or appended hereto"

—is no longer a necessary clause in a policy issued by a mutual company.

The standard form policy act in force when the *Osius Case* was decided was declared unconstitutional in *King* v. *Insurance Co.*, 140 Mich. 258 (103 N. W. 616), and mutual fire insurance companies organized under the act of 1873 (Act No. 82, Laws 1873), as amended, are now expressly relieved from having attached to policies the charter and by-laws. See Act No. 277, Pub. Acts 1905, § 5. So we think that nothing can be claimed for that part of the decision in the *Osius Case*.

We are not disposed to extend the doctrine of the case of *Osius* v. *O'Dwyer* beyond its language, and, had the policy in that case contained the assessment liability clause found in the class of policies issued by this company, which we are now considering, we do not think that this court would have held that the assured was not a member of the company, in that case. We conclude that persons who accepted the cash premium policies containing the clause above named should be held to have become members of the company, and subject to assessment by the receiver to cover all losses and expenses. The Wisconsin supreme court held cash premium policies issued under a statute somewhat similar to ours liable to assessment. *Rundle* v. *Kennan*, 79 Wis. 492 (48 N. W. 516). The statute in that case authorized an assessment on all "the property insured," while the Michigan statute authorizes the receiver to assess all "members and persons insured." We do not, however, in view of *Osius* v. *O'Dwyer*, *supra*, feel authorized to hold that the cash premium policies issued by this company which did not contain the assessment liability clause are liable to assessment, or constituted the policy holders members of the company. We

think that there is a clear distinction between these policies, and that such distinction should be recognized.

The next important question to be answered is: Should the assessment cover unearned premiums due the holders of the cash premium policies? That there is such a liability is clear from the language of the policies. They provide as follows:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy, or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain *only* the *pro rata* premium."

We think that common honesty would dictate that, in case of insolvency, the unearned premiums paid on the stock policies are a part of the "liabilities" of the company. The contract creates the liability. They are just claims against the company. *Fayette Mutual Fire Ins. Co.* v. *Fuller,* 8 Allen (Mass.), 27; *Clark* v. *Insurance Co.,* 130 Ind. 332 (30 N. E. 212); *Warner* v. *Delbridge & Cameron Co.,* 110 Mich. 590 (68 N. W. 283, 34 L. R. A. 701, 64 Am. St. Rep. 367).

Unlike the case of *Detroit Manufacturers' Mut. Fire Ins. Co.* v. *Merrill,* 101 Mich. 393 (59 N. W. 661), there was here a contract to pay unearned premiums on all cash premium policies. The logical view is that the company has received under the contract more money than it has earned, and justice requires it, in a case like this, to make a refund. Nor can such a holding be deemed unjust. In the light of this record, the mutual members had knowledge and notice of the issuing of cash premium policies. The reports of the company showed the amount received from cash premiums, and the amounts received from assessments annually. And the same may be said of the cash premium policy holders.

The last matter to be considered is the one relating to farm policies. Section 7285, 2 Comp. Laws, expressly prohibits the insurance of farm property by such companies. It may be said, therefore, that the farm policies were issued and accepted in violation of the statute. They were void for illegality, and the issuing of them was *ultra vires.* The holders of these policies should be left where they are found, and they are not entitled to the return of unearned premiums. 25 Cyc. p. 759; *Smith* v. *Barstow,* 2 Doug. (Mich.) 155; *Bagg* v. *Jerome,* 7 Mich. 145; *Niagara Falls Brewing Co.* v. *Wall,* 98 Mich. 158 (57 N. W. 99).

From the foregoing considerations, we reach the following conclusions:

(1) The said company was authorized to write and issue cash premium stock plan policies, and the holders of such said policies as contain the assessment liability clause must be considered members of the company, with all the rights and subject to all the liabilities of membership, and are liable to assessment.

(2) The holders of such cash premium stock plan polices as did not contain the assessment liability clause will not be considered members of said company, and are not liable to assessment.

(3) That the holders of both classes of the cash premium stock plan policies are entitled to unearned premiums, in accordance with the terms of the policies.

(4) That an assessment upon the mutual policy holders, and also upon the cash premium stock plan policy holders, which contain the assessment liability clause, be made, not only to pay valid loss claims, but also to pay unearned premiums on cash premium stock plan policies of both classes, and also all necessary expenses.

(5) That farm risk policies being in violation of the statute are void and *ultra vires,* and the holders thereof are not entitled to unearned premiums, nor to any relief.

It logically follows that such of the cash premium stock plan policy holders as are liable to assessment should be allowed to offset the unearned premium. The unearned premium due policy holders by reason of the appointment of the receiver should be prorated.

It will be the duty of the receiver to ascertain and re-

port to the circuit court the number of each class, of cash premium stock plan policies, and the amount of unearned premiums due thereon, as well as the amount required to pay losses upon the basis of this opinion, together with the cost of services, and the expenses of the receiver. Whereupon an assessment shall be ordered by said court upon the basis of this opinion.

The order of the circuit court relating to policies issued on farm property is affirmed. The costs of this proceeding will be borne by the fund of the said company, to be provided for in the assessment.

The writ will issue accordingly.

MONTGOMERY, C. J., and McALVAY, BROOKE, and BLAIR, JJ., concurred.

### ON REHEARING.

STONE, J. This cause has been before the full bench upon a rehearing granted on motion of the Lansing Insurance Agency *et al.* and by consent of the petitioner. Although the application for a rehearing is based upon the one question whether cash premium policies are assessable, yet the briefs of the several parties in interest, as well as that of the attorney general as *amicus curiæ*, have gone into nearly all of the questions considered by us in the original opinion. For a statement of the contents of the record, and the facts of the case, we refer to the original opinion (*ante*, 422), which we do not deem it necessary to enlarge or change, except as hereinafter set forth.

Upon the first hearing of the case, our attention was not called to section 7256, 2 Comp. Laws, which reads as follows:

"It shall not be lawful for any company organized upon the mutual plan to do business, or take risks upon the stock plan, neither for a company organized as a stock company to do business upon the plan of a mutual insurance company."

A careful examination of our statutes satisfies us that the section above quoted has not been repealed or modified,

except as it may be said to be affected by Act No. 197, Pub. Acts 1909, with the provisions of which last act it is not claimed that the Citizens' Mutual Fire Insurance Company of Holly has ever complied. For the purposes of this case, therefore, we must consider said section 7256, 2 Comp. Laws, as still in force. There can, we think, be no question that the company with which we are here dealing was organized upon the mutual plan under the provisions of Act No. 82, Laws 1873, being chapter 195, 2 Comp. Laws, and that the provisions of section 7256, 2 Comp. Laws, apply here. We are frank to say that, had we known of the existence of this statute, we should have held, as we now hold, that such of the cash premium stock plan policies as did not contain the assessment liability clause were void, as we held the farm policies to be, because issued contrary to the express provisions of the statute. An examination of the record and briefs in the case of *Osius* v. *O'Dwyer*, 127 Mich. 244 (86 N. W. 831), shows that section 7256, 2 Comp. Laws, was not referred to, nor considered by the court. It was not necessary to a disposition of that case to pass upon the validity of the policy. The case simply decides that the policy there considered was an ordinary contract of insurance, and did not make the defendants members of the company, and liable for assessment. That this was true cannot be questioned.

We are now satisfied that such of the cash premium stock plan policies as did not contain the assessment liability clause, and all of the farm risk policies, are in the same class and should be treated as void, because issued in violation of the statute. This brings us to the question whether the holders of these policies are entitled to a return of the unearned premiums. In our former opinion we held that the holders of the farm risk policies were not entitled to a return of unearned premiums in any case. A further investigation of the question satisfies us that this conclusion was not equitable or just under the circumstances. While the contracts are void and cannot be en-

forced, it does not follow that the holder of the cash premium stock plan policy of any class should not be entitled to a return of the consideration paid. If an insurance company issues today to A. a void policy, and receives the premium, both parties acting in good faith (as all the parties here seem to have acted), and tomorrow it is discovered that the policy is void, it would seem to be just and equitable that A. should be entitled to receive back the premium paid. If the risk did not attach, and in consequence the risk was never actually carried by the insurer, there has been a failure of consideration, and the insured is entitled to a return of his consideration paid, namely, the premium, as money had and received to his use. 19. Cyc. p. 609; *Waller* v. *Assurance Co.*, 64 Iowa, 101 (19 N. W. 865), and the many cases there cited; 2 May on Insurance (4th Ed.), § 567, and cases cited. While no recovery can be had upon the contract, because *ultra vires* and void under the statute forbidding it, and such contract cannot be made binding by estoppel even, yet applying the equitable rule which this court has applied to Sunday contracts, and void contracts of that nature, the parties should be placed as near as may be *in statu quo*. *Tucker* v. *Mowrey*, 12 Mich. 378; *Winfield* v. *Dodge*, 45 Mich. 355 (7 N. W. 906, 40 Am. Rep. 476); *Brazee* v. *Bryant*, 50 Mich. 136 (15 N. W. 49). This is a proceeding in equity, and certainly the rules which should apply in the equitable action of assumpsit for money had and received should apply here. The opinion of this court in the recent case of *Hoyt* v. *Paw Paw Grape Juice Co.*, 158 Mich. 619 (123 N. W. 529), is very pertinent, and is, we think, controlling of this question. A distinction should be made between contracts merely *ultra vires* and void and those which are illegal or immoral, such as wager policies and similar contracts where the parties are *in pari delicto*. 15 Am. & Eng. Enc. Law (2d Ed.), p. 932; 19 Cyc. p. 759; *Walhier* v. *Weber*, 142 Mich. 322 (105 N. W. 772.

It may be said that, to be logical, we should hold that

these policy holders are entitled to recover the *entire* premium paid, and not merely the unearned portion thereof. But we think that when we consider that this is an equitable rule to be applied in an equitable proceeding, where the holders of policies have only asked for the return of unearned premiums, and where the reports of the company have shown the manner in which the business was done from time to time, and the contracts were entered into in good faith and were treated as binding upon all parties, until the failure of the company, it would not be just or equitable to the members who must pay the assessment to require of them more than the unearned portion of the premiums. We are content with, and adhere to, the conclusion in our former opinion wherein we held that the holders of such cash premium stock plan policies as contain the assessment liability clause must be considered members of the company, with all the rights and subject to all the liabilities of membership, and are liable to assessment. Their contracts were legal and binding, and it follows that they are entitled to unearned premiums under the terms of their contract. As we held before, we now repeat:

"There was here a contract to pay unearned premiums. * * * The logical view is that the company has received under the contract more money than it has earned, and justice requires it, in a case like this, to make a refund."

We think that a distinction should be made between this class and the members who hold mutual policies, and who paid assessments from time to time, as the obligations of the company required them to be made.

We conclude therefore:

(1) That the holders of the mutual or assessment plan policies and the holders of such of the cash premium stock plan policies as contain the assessment liability clause are members of the said company, and are liable to assessment.

(2) That the holders of such cash premium stock plan

policies as did not contain the assessment liability clause, and the holders of the farm risk policies, will not be considered members of said company, and are not liable to assessment, and their policies are void.

(3) That the holders of both classes of the cash premium stock plan policies and the holders of such of the farm risk policies as were issued on the stock plan are entitled to unearned premiums, the same to be prorated.

(4) That an assessment upon the mutual policy holders, including the cash premium stock plan policy holders which contain the assessment liability clause, be made by the receiver, not only to pay valid loss claims, but also to pay unearned premiums on cash premium stock plan policies of all classes, including cash premium stock plan farm risk policies, and also all necessary expenses and costs. The cash premium stock plan policy holders, here held to be liable to assessment, should be allowed to offset the unearned premiums. It will be the duty of the receiver to ascertain and report to the circuit court in chancery the number of each class of cash premium stock plan policies, and the amount of unearned premiums due thereon, as well as the amount required to pay valid losses, upon the basis of this opinion, together with the costs for services, and the expenses of the receiver. Whereupon an assessment shall be ordered by said court upon the basis of this opinion. The order of the circuit court relating to policies issued on farm property is so modified as to entitle the holders of cash premium stock plan policies in that class, if any, to unearned premiums.

The costs of this proceeding will be borne by the fund of the said company to be provided for in the assessment.

Bird, C. J., and Ostrander, Moore, McAlvay, Brooke, and Blair, JJ., concurred.