KREMER *v.* SMITH.

BILLS AND NOTES — "KITING CHECKS" — COURTS WILL NOT AID PARTIES ENGAGED IN UNLAWFUL ACTS.

    In an action to recover on checks given plaintiff by defendant, payment of which was refused because of insufficient funds, the trial court properly directed a verdict in favor of defendant where it appeared that the parties were engaged in the unlawful acts of "kiting checks," since neither is entitled to any consideration from the courts.

Error to Wayne; Webster (Arthur), J. Submitted April 30, 1924. (Docket No. 9.) Decided June 2, 1924.

Assumpsit by Ewald C. Kremer against Andrew Smith for the amount of certain checks. Judgment for defendant. Plaintiff brings error. Affirmed.

*Donald A. Wallace,* for appellant.

*Charles Bowles,* for appellee.

BIRD, J.    Plaintiff sued defendant in assumpsit
to recover on three checks drawn, one on the
American State Bank and two on the Detroit Sav-
ings Bank of Detroit, for the aggregate sum of
$575.    The payment of these checks was refused by
these banks on account of "insufficient funds."    De-
fendant pleaded the general issue and gave notice of
set-off and recoupment.    After both parties rested
each requested a directed verdict in his behalf.    The
trial court directed a verdict for the defendant on the
ground that plaintiff had failed to establish his claims
with sufficient certainty.

The proofs disclosed that plaintiff Kremer was
formerly an accountant of the Union Bank in Toronto,
Canada; that he and defendant Smith, together with
Greenaway and Woollever, were interested in promot-
ing two small corporations at Flat Rock.    They did
not have sufficient funds, so plaintiff and defendant
agreed to exchange checks, one living in Toronto and
the other in Detroit.    The plan pursued was outlined
by plaintiff, as follows:

"Well, in the beginning it was arranged that we
exchange checks.    I gave them some of my checks
signed in blank, some of them were filled out, and
they gave me checks drawn on Detroit, some of them
filled and some of them in blank.    *    *    *
"Then they, according to the payments' of amounts
required in Detroit, they would fill in one of my blank
checks and cash it and advise me of the amount, and
I in turn would cash a check of theirs in Toronto at
the Union Bank of Canada, depositing the funds with
the Home Bank to take care of the checks then in
transit of mine that they had cashed in Detroit, the
one check off-setting the other."

The plaintiff conceded that this is what is termed
among bankers as "kiting checks."    As to the
character of the operations plaintiff testified:

"That method of using checks establishes a false
credit, which is something that all banks are bitterly

opposed to.    If a bank finds that one of its customers is kiting checks, the bank will discontinue his account and close him out.    Banks will not countenance check kiting at all.    This was all known to me in 1915. This method of check kiting establishes a false account on the books of the bank.

"*Q.* And it is a fraud on that bank?

"*Mr. Wallace:* I object to that as calling for a conclusion.

"*The Court:* Take the answer.

"*Q.* It is a fraud on the bank, is it not?

"*A.* Yes, sir.

"*Q.* And it is a fraud upon any one of the banks which are being used in a check kiting proposition or circle that the parties are using?    It is a fraud on all of the banks?

"*Mr. Wallace:* Same objection.

"*The Court:* Do you mean the same objection that it is a conclusion of the witness?

"*Mr. Wallace:* Yes, your honor, that it is a fraud. That is a conclusion of law.

"*The Court:* I will take the answer.

"*Q.* Is it not?

"*A.* Yes, sir.

"*Q.* And, of course, all this was known to you in 1915?

"*A.* In 1915.    *    *    *

"*Q.* You were the ones that conceived and carried out this check kiting operation, the four of you?

"*A.* It was not started as a check kiting proposition.

"*Q.* Well, it was a check kiting proposition the first of January, was it not?

"*A.* It was in January some time.

"*Q.* You knew at that time that they did not have any money or any funds?

"*A.* Yes, some time in January, the latter part of January, that is, possibly the first of February.

"*Q.* And it was agreed that they would send you checks and you would cash them, and then you would send them checks to meet the ones that they had drawn?    Generally stated that is the arrangement?

"*A.* Yes, that is about the arrangement."

It is apparent from the testimony of plaintiff, which is not denied by defendant, that they were engaged in

an unlawful practice to establish a false credit for the purpose of getting funds to finance their corporations. And they succeeded in getting the use of several thousand dollars for several months without the consent of the banks and without paying any interest. There came a time when the final checks had to be taken care of, and Smith, it appears, did not take care of all of his, and plaintiff was obliged to take care of them in order to avoid detection by his own bank, and to avoid criminal prosecution. He admits if he had been detected he would have been prosecuted criminally. Had Act No. 142, Pub. Acts 1923, been in force when these checks were exchanged, defendant would have been liable to arrest and punishment in this State. Both parties are *in pari delicto,* and neither is entitled to any consideration from the courts. The courts are busy enough untangling legitimate transactions, without undertaking to enforce a balance which has accrued to one of two persons out of fraudulent transactions.

"No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the ground work of his claim. * * * The law, in short, will not aid either party to an illegal agreement; it leaves the parties where it finds them." 9 Cyc. p. 546.

See, also, *Smith* v. *Barstow,* 2 Doug. (Mich.) 155; *Bagg* v. *Jerome,* 7 Mich. 145; *Rhoades* v. *Malta Vita Pure Food Co.,* 149 Mich. 235; *Ely* v. *Oakland Circuit Judge,* 162 Mich. 466; *Mancourt-Winters Coal Co.* v. *Ohio & Michigan Coal Co.,* 217 Mich. 449.

The trial court was right in directing a verdict for the defendant. Neither party will recover costs.

CLARK, C. J., and McDONALD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.