# CONNECTICUT MUTUAL LIFE INSURANCE COM-
PANY *v.* LUCHS.

IN ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Decided May 7th, 1883.

*Fraud—Insurance.*

A and B formed a partnership with a capital of $10,000, in which each was to
contribute one-half the capital. A furnished B's moiety temporarily, and
when after some time B failed to comply with his agreement, A, in May,
1869, applied for a policy on B's life for $5,000. One of the brothers of B
had committed suicide. One of the questions asked A by the company was
as to the number of brothers of B deceased, and causes of death ; to this
A made no answer. B, in the previous February, had applied to the same
company for a policy, and in answer to the same question had replied:
" Brothers dead, one; cause of death, accident." A policy was issued on
A's application, by which the company agreed to insure the life of B for
$5,000, and to pay the money "to the assured" within 90 days after notice
of the death of B. B died in an insane asylum. *Held,*
1. That although by the terms of the policy the life of B was *insured*, the
   person in whose favor it was *assured* was A, and that the action on the
   policy was rightfully brought in his name.
2. That A had an insurable interest in B's life to the extent of the moiety of
   the capital which B should have contributed to the firm, without respect
   to the condition of the partnership accounts, unless his estimate of the
   interest at the time of the application was made in bad faith.
3. That the failure of A to answer the question as to the suicide of B's brother
   could not necessarily be imputed as a fraud ; and that the concealment of
   the cause of the brother's death in B's application could not be imported
   into this suit and applied to defeat A's application.

Suit to recover the sum of $5,000 alleged to be assured to
the plaintiff below, and defendant in error, Luchs, on the life of
one Dillenberg. Pleas: 1st. Non debet; 2d. That the plain-
tiff had no insurable interest in Dillenberg's life; 3d. That the

policy was procured through fraudulent concealment of material facts, and by means of false representation. Luchs and Dillenberg entered into a copartnership, in which the capital was to be $10,000. Of this each to contribute one-half. Luchs actually contributed all; and when Dillenberg failed to contribute his half he applied to the defendant's agent in Washington for a policy of $5,000 on Dillenberg's life. Dillenberg had three months previously applied to the same agent for a policy on his own life, and in reply to a question propounded respecting his family had made the following answer:

Brothers living, one; ages, 48; health, good.  Brothers dead, one; ages, 23; cause of death, accident.

Luchs to the same question replied:

Brothers living, one; ages, 48; health, good.  Brothers dead, ; age, ; cause of death,

On this application a policy was issued, of which the following is the material part:

"This policy of insurance witnesseth, that the Connecticut Mutual Life Insurance Company, in consideration of the declarations and representations made to them in the application for this insurance, and the sum of one hundred and twenty-five dollars and cents, to them in hand paid by Leopold Luchs, of Washington, D. C., and of the annual premium of one hundred and twenty-five dollars and cents, to be paid on or before the second day of June in every year during the continuance of this policy, to assure the life of Levi Dillenberg, of Washington, in the county of Washington, District of Columbia, in the amount of five thousand dollars, for the term of the whole continuance of his life.

"And the said company do hereby promise and agree to and with the said assured, his executors, administrators, and assigns, well and truly to pay, or cause to be paid, in the city of Hartford, the said sum insured to the said assured, his executors, administrators, or assigns, within ninety days after due notice and proof of the death of the said Levi Dillenberg, deducting therefrom all indebtedness of the party for loans made by the company on this policy."

At the trial the court instructed the jury as follows:

" 1. If the jury find from the evidence that in May, 1869, the plaintiff and Levi Dillenberg were in partnership, and that to that partnership the plaintiff contributed all the capital and both contributed their services, and that they shared the profits equally, and that the policy in suit was applied for by the plaintiff under an agreement between him and Levi Dillenberg, whereby the latter undertook to pay the premiums on the same, and that this agreement was made by said Dillenberg, because of an obligation which he agreed he was under to the plaintiff, growing out of the receipt, past or prospective, by Dillenberg of one-half of the partnership profits, and that said policy was taken out by the plaintiff in good faith and not for the purpose of speculating on said Dillenberg's life, then they will render a verdict for the plaintiff on defendant's second plea." . . .
"4. Since [in] the application upon which the policy in suit was issued, there is no answer to the questions, 'brothers dead ; age ; cause of death,' it follows that there is no warranty in respect of the information called for by said questions."

The defendants excepted. The jury rendered a verdict for the plaintiff for the full amount. The defendants brought the case here on error.

*Mr. Enoch Totten* for the plaintiff in error.—I. An action on this policy can be maintained under any circumstances, the most favorable to Luchs, only in the name of the administrator of Dillenberg. *Hollis* v. *Richardson*, 13 Gray, 392; *Burroughs* v. *Assurance Company*, 97 Mass. 359 ; *Gould* v. *Emerson*, 99 Mass. 154; *Campbell* v. *New England Insurance Company*, 98 Mass. 381 ; *Bailey* v. *Insurance Company*, 114 Mass. 177 ; *Exchange Bank* v. *Rice*, 107 Mass. 37.—II. If this policy was taken out by Luchs on the life of Dillenberg, for the benefit of the former, it was a wager policy, and is void, because at the date of the application he did not have an interest in the life of Dillenberg to the extent of $10,000 ; he had no insurable interest whatsoever in Dillenberg's life ; on the contrary, he was actually indebted to Dillenberg ; there is no pretence here that there was any interest held by Luchs, unless it existed by

reason of the copartnership business; and the testimony of the plaintiff's own expert witness, corroborated by his own books of account, establish the fact beyond controversy that at the date of the application for the insurance the firm was indebted to Dillenberg to the extent of over $4,000. A valid insurance cannot be effected by one man upon the life of another unless there is an indebtedness existing in favor of the person who takes out the policy, or the equivalent, and the indebtedness must be in proportion to the amount of the insurance. *Cammack* v. *Lewis*, 15 Wall. 643. It has been held that the near relationship of father and son does not constitute an insurable inserest in the son on the father's life, unless the son has a well-founded or reasonable expectation of some pecuniary advantage to be derived from the continuance of the life of the father. See also, *Guardian Life Insurance Company* v. *Hogan*, 80 Ill. 35; May on Insurance, sec. 107. *Cammack* v. *Lewis*, 15 Wall. 643; *Insurance Company* v. *Sturges*, 18 Kansas, 93; *Stevens* v. *Warren*, 101 Mass. 564; *Ruse* v. *Mutual Benefit Life Insurance Company*, 23 N. Y. 516; May on Insurance, 398; *Warnock* v. *Davis*, 104 U. S. 775. In *Lewis* v. *Phœnix Life Insurance Company*, 39 Conn. 100, it was held that the mere relationship of brother, without more, is not sufficient to support a life insurance policy.—III. The court instructed the jury in pursuance of a prayer of plaintiff's counsel that "since in the application upon which the policy in suit is issued, there is no answer to the questions, ' Brothers dead; age; cause of death,' it follows that there is no warranty in respect of the information called for by said questions." The court in this connection denied the prayer of defendant's counsel as to the right of the company to refer to and rely upon the former application to which its attention had been specially invited by the applicant in this case. This was error. For some purpose, inferable only from the extraordinary circumstances and evidence disclosed in this case, Dillenberg, with the help of Myers, procured a policy on his own life for $5,000 from this company on an application dated only about three months before this application, and written by Myers; in the first application the same interrogatory about the number

of brothers dead and the cause of death, is put to Dillenberg, and he answers that one of his brothers is dead and that the cause of his death was "accident." This answer Myers knew to be false at the time he wrote the application. In the last application this question remains unanswered, but the former application is twice referred to in the latter. The defendant proved at the trial that when the examining officer of the company noticed the omission he referred to the former application, and there found it stated that the cause of death of the brother was "accident;" upon this information the present policy was issued. The officers of the company had a right to presume that the information on this point was truly given in the former application in any case, and especially in view of the fact that they were twice referred to it for information. The reference in this application to the "former application" for information, makes that application a part of this one, and a false answer in that will be as fatal as if in this. *Rawls* v. *American Mutual Life Insurance Company*, 27 N. Y. 282; Bliss on Life Insurance, p. 78, 609, § 394 and § 57; *Hawkins* v. *United States*, 96 U. S. 689; *Clark* v. *Manufacturers' Insurance Company*, 2 W. & M. 472.

Mr. Justice Field delivered the opinion of the court.

This was an action by Leopold Luchs on a policy of insurance upon the life of Levi Dillenberg, issued by the Connecticut Life Insurance Company in June, 1869. Luchs and Dillenberg were partners at the time in the business of buying and selling tobacco in the city of Washington. Their partnership was formed in October, 1866, each agreeing to contribute his services and one-half of the capital. It was understood that the money of Dillenberg was then invested in mining stocks, and could not at once be obtained. Luchs accordingly furnished the entire capital, which was over $10,000. Dillenberg never contributed his portion, and about two years after the partnership was formed his failure in this respect caused dissatisfaction and complaint. It was thereupon suggested by one Myers, who was employed by an agent of the insurance company, and who had been called in as an accountant to examine the books

of the concern, that, as a means of "adjusting the dispute or misunderstanding between the partners," a policy of insurance should be obtained upon the life of Dillenberg for the benefit of Luchs, and that Dillenberg should retire from the firm within a year afterwards. Nothing, however, was then done upon this suggestion, but in the following year the policy in suit was procured.

1. The first question presented is as to the right of Luchs to sue upon it. It is plain from the parol evidence in the case, that it was the intention both of Luchs and Dillenberg that the policy should be procured for the benefit of Luchs.

The declaration, which is the application for the policy, begins with an averment that he, Luchs, is desirous of effecting an insurance upon the life of Dillenberg, and proceeds to state the latter's age, the condition of his health, the character of his habits, and that he, Luchs, has an interest in the life of Dillenberg to the amount of $10,000. The declaration is signed both by Luchs and Dillenberg, though it purports in every line to be the separate application of Luchs. It is accompanied by questions and answers, and to the first question, as to the name and residence of the person for whose benefit the insurance is proposed, the answer is: "Leopold Luchs, Washington, D. C." The answers also are signed both by Luchs and Dillenberg.

The policy was issued and delivered to Dillenberg, and retained by him until after the dissolution of the partnership, when he handed it to Luchs, stating that he gave it to him to show that he intended to do what was right and fair with him, and requested him to pay the premiums on it, promising to refund the money. The first two premiums were paid by Dillenberg, the others by Luchs.

The difficulty in the question presented arises from the language of the policy. Omitting words not essential on this point, it reads as follows:

"This policy witnesseth that the Connecticut Mutual Life Insurance Company, in consideration of the declarations and representations made to them in the application for this insurance, and the sum of $125 to them in hand paid *by Leopold Luchs*, . . .

do assure the life of Levi Dillenberg. . . . And the said company do hereby promise . . the said *assured* . . to pay . . . . said sum *insured* to the said *assured*, his executors, administrators, or assigns, within ninety days after due notice and proof of the death of the said Levi Dillenberg.

"It is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the *assured* upon the express conditions that in case the *said person whose life is hereby insured* shall pass beyond the settled limits or the protection of the government of the United States, . . . this policy shall be null. It is also understood that if the proposal, answers, and declaration made by the said Leopold Luchs, *which are hereby made part and parcel of this policy as fully as if herein recited, and upon the faith and warranty of which this agreement is made*, shall be found in any respect untrue, this policy shall be null and void, or in case the said *assured* shall not pay the said annual premiums, . . . this policy shall cease.

"It is further agreed that this policy shall not take effect . . until the premium above named shall be actually paid . . . . during the life of the *insured*."

The contention of the plaintiff is that the words " the assured" in the policy apply to the person for whose benefit the policy was effected, that is, Luchs, and not to the party whose life was insured.

There are undoubtedly instances where this distinction between the terms *assured* and *insured* is observed, though we do not find any judicial consideration of it. The application of either term to the party for whose benefit the insurance is effected, or to the party whose life is insured, has generally depended upon its collocation and context in the policy.

We are of opinion that, reading the policy here in connection with the declaration and the answers of Luchs, which form a part of it, and indicate the object of procuring it, the term assured must be held as applicable to him for whose benefit it was effected.

The policy considered in *Ætna Life Insurance Company* v. *France*, 94 U. S. 562, gives some support to this view. There the policy was effected by a brother for a sister's benefit, and

the term assured was held to apply to the sister, for she recovered in a suit brought in connection with her husband on the policy. The attention of the court does not appear, however, to have been directed to that term. It may be said, also, that there could be little doubt as to its proper application in that case, as it was followed by the words "and *her* executors, administrators, or assigns," thus limiting it to the sister. In other respects the language is substantially identical with that of the policy under consideration.

2. The second question presented for our determination is whether Luchs had an insurable interest in the life of Dillenberg. Upon this we have no doubt. Dillenberg was his partner and had not paid his promised proportion of the capital of the concern. At the time the policy was applied for he was still in default, and although it might have turned out that the actual amount due upon a settlement of accounts was less than the promised proportion, it was not a matter definitely ascertained at the time. Besides what was thus due to him, Luchs was interested in having Dillenberg continue in the partnership. He had such an interest, therefore, as took from the policy anything of a wagering character.

As this court said in *Warnock* v. *Davis*, 104 U. S. 779:

"It is not easy to define with precision what will, in all cases, constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated, generally, however, to be such an interest arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation. . . . But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured."

Certainly Luchs had a pecuniary interest in the life of Dillenberg on two grounds: because he was his creditor and be-

cause he was his partner.    The continuance of the partnership, and, of course, a continuance of Dillenberg's life, furnished a reasonable expectation of advantage to himself.    It was in the expectation of such advantage that the partnership was formed, and, of course, for the like expectation, was continued.

In *Morrell* v. *Trenton Mutual Life and Fire Insurance Company*, 10 Cushing, 282, a policy was taken out by the plaintiff upon the life of his brother, who was about going to California, on an agreement that the latter should pay to him one-fourth of his earnings for the following year.    In an action on the policy it was contended that the plaintiff had no insurable interest upon the life of the insured, but the court, after deciding that he had such an interest from the fact that he held a promissory note signed by the firm of which the insured was a partner, also said that it was strongly inclined to the opinion that the plaintiff had another interest in the life of the person insured.    "He had," said the court, "a subsisting contract with that person, made on a valuable consideration, by which he was to receive one quarter part of his earnings in the mines of California for one year.    Such an interest cannot, from its nature, be valued or apportioned.    It was an interest upon which the policy attached.    By the loss of his life within the year, the person whose life was insured lost the means of earning anything more, and the plaintiff was deprived of receiving his share of such earnings to an uncertain and indefinite amount."

In *Trenton Mutual Life and Fire Insurance Company* v. *Johnson*, 4 Zabriskie's Reports, 576, a policy was taken out by the plaintiff on the life of one Van Middlesworth for $1,000, one-half payable to the plaintiff and the other half to Van Middlesworth.    They belonged to an association called the New Brunswick and California Mining and Trading Company, the capital stock of which consisted of forty-five shares of $600 each.    The company consisted partly of shareholding members and partly of active members, the shareholders being each required to furnish a substitute to proceed to the mines of the company.    The plaintiff owned one share, advanced $600 of capital and procured Van Middlesworth to go out as his sub-

stitute, which he did, and acted as his agent and substitute; and the assets of the company having been divided in California he received the plaintiff's share, and afterwards died, not having paid it over. By one of the articles of the association all treasures and all the proceeds of the labor of each member, and all profits, were to go into a general fund for the benefit of the association. To the action brought on the policy it was objected that the plaintiff had no insurable interest in the life of the deceased. On this question the court said:

"In the present case Johnson had a direct interest in the life of his substitute, whose earnings were to constitute a part of the joint funds, of which he was entitled to his share, an interest fully equivalent to the interest of a wife in the life of her husband, of a child in that of a parent, or a sister in that of a brother. And at Van Middlesworth's death, although prior to that time the company had been virtually dissolved, he had an interest in him as his creditor to the extent of his share of the assets in his hands."

In *Bevin* v. *The Connecticut Mutual Life Insurance Company*, 23 Conn. 244, the plaintiff had obtained a policy of insurance for $1,000 on the life of one Barstow, to whom he had advanced $350, besides articles of personal property, to enable him to go to California and there labor for one year, on an agreement that he would account to the plaintiff for one-half of his gains. The court said that Barstow was the plaintiff's debtor and partner, giving to the plaintiff an interest in the continuance of his life, as by that means, through his skill and efforts, the plaintiff might expect not only to get back what he had advanced, but to acquire great gains and profits in the enterprise. "All the books," the court added, "hold this to be a sufficient interest to sustain a policy of insurance. As to the value of this interest, we think it must be held to be what the parties agreed to consider it in the policy. This was the sum asked for by the plaintiff, and which the defendants agreed to pay in case of death, and for which they were paid in the premiums given by the insured. The policy must, we think, be held to be a valued policy." And after referring to a policy

of insurance obtained by a sister on her brother's life, where no question seemed to have been made as to the amount, but only whether it was an interest which the law would recognize, the court said:

"So, in every case, where a person on his own account insures the life of a relative, if the sum named in the policy is not to be the rule of damages, we inquire what is? The impossibility of satisfactorily going into the question in most cases, and especially where there is nothing to guide the inquiry, and everything is uncertain, would lead us to hold that a policy like this is a valued policy as most consistent with the understanding of the parties and the principles of law."

3. The third question presented for determination relates to alleged breaches of the warranty of the policy. It is alleged that the policy was issued upon the faith of certain statements and answers of the plaintiff which were untrue. These statements were, first, that the plaintiff had an interest in the life of Dillenberg to the amount of $10,000, when, in fact, he had no interest in it; and, second, that the cause of the death of one of the brothers of Dillenberg was accident, when, in fact, he had committed suicide.

As to the alleged breach of the warranty of the interest of the plaintiff in the life of Dillenberg there is this answer: The statement of the plaintiff as to the amount of his interest was necessarily conjectural. No one can affirm with absolute certainty that he has an interest to a definite sum in the life of another, where the interest depends upon the result of an existing partnership or other business transactions not yet terminated. The value of his interest in such cases will always be more or less a matter of opinion. The statement, in that regard, must, of necessity, be taken as a mere estimate. If, therefore, the plaintiff had an interest in the life of Dillenberg and his estimate was made in good faith, the declaration cannot be deemed untrue so as to constitute a breach of the warranty. The extent of a man's interest in the life of another, depending upon a continuing partnership or the results of business transactions not yet completed, is, in the nature of things,

uncertain, and in such cases all that can be required is that he had an actual interest, and that his estimate was made in good faith, without any purpose to deceive. *Bevin* v. *Connecticut Mutual Life Insurance Company*, cited above.

Here the plaintiff valued his interest and took out a policy for only half of the sum estimated. He did not procure the policy for any purpose of speculating upon the duration of the life of Dillenberg. From the finding of the jury we must take as true, that his representation was made in good faith upon an honest opinion as to the value of his interest.

As to the alleged misstatement of the cause of the death of a brother of the deceased, it is sufficient to observe that there is no allegation on this subject in the answers of the plaintiff, and the point is taken simply because, in an answer to a previous application, that statement was made. Such previous answer cannot be incorporated into the present policy. The reference to the previous application is made for the answer to a different inquiry.

There may be, as stated by counsel for the company, some inconsistencies between the charges given at its request, and those given at the request of Luchs. The latter present all the disputed questions of fact to the jury, and if those granted at its request are erroneous, in so far as they differ, it is not for it to complain, as was well observed by counsel, that while the judge held Luchs within proper limits, itself was suffered to go beyond them.

Upon the whole record of the case we find no error sufficient to justify a reversal of the judgment.

*Judgment affirmed.*