NAPARSTEK *v.* CITIZENS MUTUAL INSURANCE COMPANY

1. PLEADING—INSURANCE—ACTION ON POLICY—ANSWER—DEFENSES
—COURT RULE.

   The defenses of breach of condition, agreement, representation,
   or warranty of a policy of insurance, or the defenses of fail-
   ure to perform a promise, representation, or warranty, or
   failure to furnish proof of loss as required by the policy
   must be stated specifically and with particularity in the answer
   to an action brought to recover money due under the policy
   (GCR 1963, 112.4).

2. PLEADING—INSURANCE—TERMS OF POLICY—SUMMARY JUDGMENT.
   Summary judgment for defendant insurance company in an ac-
   tion by plaintiff to recover money due under an insurance
   policy, on the ground that plaintiff's recovery was barred by
   an exclusionary clause in the policy without the filing of an
   answer by the insurance company setting up the defense of
   the exclusionary clause, was proper where plaintiff asserted in
   his complaint the exclusionary clause upon which the court
   based its order for summary judgment and defendant's mo-
   tion verified the presence of the exclusionary provision of the
   policy (GCR 1963, 112.4; 117.1).

3. INSURANCE—COVERAGE OF POLICY—EXCLUSIONARY CLAUSE—CON-
STRUCTION.

   Clause in insurance policy issued by defendant insurer excluding
   from coverage certain losses to an "assured" with respect to
   which he shall, without written consent of the company, make
   any settlement with or prosecute to judgment any action
   against any person or organization who may be legally liable

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur 2d, Insurance §§ 1944–1947.
[2] 44 Am Jur 2d, Insurance § 1947; 41 Am Jur, Pleading §§ 340–
343.
[3] 44 Am Jur 2d, Insurance § 1408.
[4] 44 Am Jur 2d, Insurance § 1052 *et seq.*

therefor *held*, to apply to plaintiff even though he is referred to as an "insured" in the clause in defendant's policy which extends coverage to him and the exclusionary clause speaks of "assured."

4. INSURANCE — COVERAGE OF POLICY — EXCLUSIONARY CLAUSE — WAIVER.

An insured person must be presumed to know the terms and conditions of the policy insuring him even though the policy in question was issued to a person in whose car plaintiff was a passenger, and it cannot be said that the insurer waived applicability of exclusionary clauses in the insurance policy merely because it did not voluntarily offer to send plaintiff a copy of the policy or offer to counsel or advise plaintiff as to the procedure to be followed in his case.

Appeal from Wayne, Edward S. Piggins, J. Submitted Division 1 May 6, 1969, at Detroit. (Docket No. 5,328.) Decided August 27, 1969.

Complaint by Abram Naparstek against Citizens Mutual Insurance Company to recover money due under an insurance policy issued by defendant. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*Rosin & Kobel* (*Ashley Gorman*, of counsel), for plaintiff.

*Conklin & Maloney*, for defendant.

Before: HOLBROOK, P. J., and McGREGOR and BRONSON, JJ.

HOLBROOK, P. J. This case involves an automobile insurance policy issued by the defendant, Citizens Mutual Insurance Company, to Ben Lachman, the owner and driver of a motor vehicle that was involved in a collision with another automobile owned and operated by John Firosz on April 5,

1963.   At the time of the accident the plaintiff
Abram Naparstek was a guest passenger in the
Lachman vehicle.

After obtaining a judgment for $3,052.05 against
John Firosz in the Wayne county circuit court on
October 19, 1966, plaintiff herein brought an action
under the uninsured motorist provision of the Lach-
man insurance policy to collect the judgment from
defendant for the reason that Firosz was an unin-
sured motorist.  The defendant filed a motion for
summary judgment on March 24, 1967, under GCR
1963, 117.2, claiming that plaintiff had failed to
state a claim upon which relief could be granted.
This motion was denied on September 7, 1967, with-
out prejudice to renewal after discovery and the
taking of depositions.  After the taking of the
depositions, defendant filed a second motion for
summary judgment on December 7, 1967.  The mo-
tion was based on three grounds, namely, that
plaintiff had not forwarded a copy of the summons
and complaint to the company as regarded the
Firosz case; that plaintiff had not first resorted to
arbitration as provided in the policy; and, third,
that plaintiff had failed to obtain the written consent
of the company before reducing his claim against
Firosz to judgment.  This motion was granted and
summary judgment filed on March 5, 1968, on the
basis that plaintiff's failure to obtain the written
consent of the defendant before prosecuting the
Firosz suit to judgment was fatal.  Plaintiff appeals
from the granting of summary judgment in favor
of defendant company.

Plaintiff has taken this appeal and raises 3 ques-
tions for determination which will be dealt with in
order.

*1. Did the trial court commit error in allowing defendant to proceed with its motion for summary judgment under GCR 1963, 117?*

Plaintiff asserts that defendant failed to comply with GCR 1963, 112.4, in making answer to plaintiff's complaint. This rule provides:

"Action Upon a Policy of Insurance. In an action upon a policy of insurance it is sufficient to aver the execution, the date, the amount of the policy, the premium paid or to be paid, the property or risk insured, the interest of the insured, and the loss. The defenses of breach of condition, agreement, representation, or warranty of a policy of insurance or an application therefor, or the defenses of failure to perform a promise, representation, or warranty, or failure to furnish proof of loss as required by the policy shall be stated specifically and with particularity."

The plaintiff in his complaint at paragraph 19 stated as follows:

"Defendant, for the first time, under date of December 6, 1966, advised counsel for plaintiff of an exclusionary provision in said policy, requiring a written waiver by defendant of its interest in the litigation referred to herein."

The defendant in its answer in response to paragraph 19 stated:

"Defendant admits that as of December 6, 1966, plaintiff was advised of an exclusionary provision in said policy, and for the provisions of said policy, your defendant herein refers to the insurance contract, which speaks for itself."

And its amended answer added the following:

"That on the 7th day of April, 1967, defendant herein furnished to plaintiff counsel a facsimile copy

of the insurance policy involved containing all of
the insurance provisions applicable to said cause."

It is evident from the foregoing that plaintiff
asserted in his complaint the very exclusionary
clause in the policy of insurance upon which the
court based its order for summary judgment. The
answer of the defendant verified the presence of the
exclusionary provision of the policy. GCR 1963,
117.1, provides in part:

"A party against whom a claim, counterclaim,
cross-claim, or third-party claim is asserted may
move with or without supporting affidavits for a
summary judgment in his favor on all or any part
of such claim at any time."

We conclude that it was not necessary for the
defendant to answer plaintiff's complaint before
moving for a summary judgment. We also note
that the defendant in its motion for summary judg-
ment specifically spelled out the terms of the in-
surance policy upon which it based its motion and
at that time the plaintiff had been furnished a copy
of the insurance policy. We rule that the court did
not commit error as to the procedure followed.

2. *Did the trial court commit error in deciding
that "exclusion clause 1" barred plaintiff from ob-
taining relief?*

It is plaintiff's claim that "exclusion clause 1"
does not apply to a person in plaintiff's position, a
passenger in the vehicle of the named assured.
Plaintiff would have this Court hold that while
plaintiff, a passenger, was "insured" under the un-
insured motorist provision of the policy in question,
he was neither an "assured" nor a "named assured"
by definition, as such terms are used in the policy.
Under § 4 of the policy it provides in part as follows:

"The persons following are insured under this section:

\*  \*  \*

"(3) As respects insurance afforded by coverage F, any other person while accupying the insured automobile."

Under the title "exclusions" it is stated:

"This policy under section four does not apply:

"(1) To bodily injury to an assured, care or loss of services recoverable by an assured, or property damage or loss of use of property sustained by an assured, with respect to which such assured, his legal representative, or any person entitled to payment under this section shall, without written consent of the Company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor."

Plaintiff asserts that because under § 4 he is referred to as an "insured" and the exclusions apply only to an "assured," he is not included in the exclusion clause. We do not read § 4 and the exclusionary clause in the manner that plaintiff would have us read them. In Black's Law Dictionary (4th ed), p 158, the word "assured" is defined as follows:

"The person for whose benefit the policy is issued and to whom the loss is payable, not necessarily the person on whose life or property the policy is written. *Insurance Co.* v. *Luchs* (1883), 108 US 498 (2 S Ct 949, 27 L Ed 800). Ordinarily synonymous with insured. *Thompson* v. *Northwestern Mutual Life Insurance Company* (1913), 161 Iowa 446 (143 NW 518)."

We conclude that the word "assured" as used in the exclusionary clause of the policy includes the plaintiff who is mentioned as an "insured" in § 4. We do not deem the policy of insurance and the provisions in .question to be ambiguous and therefore

plaintiff's cases cited in support of his position are not applicable.

3. *Did the trial court commit error in ruling that there was no estoppel or waiver by defendant of "exclusion clause 1"?*

It appears that the main thrust of plaintiff's appeal is contained in this issue. If plaintiff is to succeed in his claim that there was an issue of fact raised as to whether or not defendant waived "exclusion clause 1" or is estopped to assert it, it must be contained in the pleadings and the depositions. The plaintiff's complaint as to the pertinent allegations is stated in the footnote.[1] These allegations

---

[1] "6. Neither plaintiff nor his counsel has, to this time, been offered, tendered, shown, or otherwise been informed of the complete terms of the said policy of insurance.

"7. Defendant has, at all times referred to herein, been the issuer of said insurance, the insurer thereon, and in full possession of knowledge of all the terms, conditions, and provisions thereof.

"8. Defendant was first informed of the claim of plaintiff under said policy prior to August 1, 1963.

"9. Defendant was informed of the institution of said litigation on or about September 20, 1963, at which time defendant was also informed that service had been made upon the defendant therein.

"10. At no time did defendant inform plaintiff or his counsel that it had any interest whatsoever in the proceeding in said litigation.

"11. Under date of March 1, 1965, counsel for plaintiff communicated with defendant concerning its subrogation position.

"12. Under date of April 9, 1965, defendant responded indicating in part, ' * * * we are again closing our file inasmuch as there is not any action that we should take at this time.'

"13. Prior to the trial date, in 1966, counsel for plaintiff communicated on several occasions with an agent of defendant, concerning the possibility that defendant may be interested in such litigation because of possible liability under said policy for damages caused by said uninsured motorist.

"14. Defendant advised said counsel, prior to said trial, that it did not desire to enter into said litigation.

"15. This court was informed, on the record, prior to judgment, of the position of defendant as aforesaid.

"16. In reliance upon the promises, representations, and guarantees of defendant that it had no interest in participating in said litigation, plaintiff proceeded to judgment in said action, without participation of defendant.

"17. Judgment was rendered in said cause on October 19, 1966, in the amount of $3,000 damages and $52.05 costs, making a total of $3,052.05.

were supplemented by deposition of plaintiff's counsel, Mr. David Rosin, which we summarize below in the footnote.[2]

Plaintiff asserts the theory that defendant had a duty to inform the plaintiff's counsel of the terms

---

"18. Almost immediately thereafter plaintiff, through counsel, requested defendant to proceed on the liability of defendant under the uninsured motorist provisions of said policy.

"19. Defendant, for the first time, under date of December 6, 1966, advised counsel for plaintiff of an exclusionary provision in said policy, requiring a written waiver by defendant of its interest in the litigation referred to herein.

"20. Defendant, by virtue of its promises, representations, and guarantees as aforesaid, has intentionally misled plaintiff, caused him detrimentally to rely on promises, representations, and guarantees which defendant did not intend to fulfill and which defendant knew were untrue.

"21. Defendant is estopped to assert the said exclusionary provision in defense of its liability under said policy.

"22. By virtue of the promises, misrepresentations, and guarantees as aforesaid, and the fraud and estoppel resulting therefrom, defendant is indebted to plaintiff in the amount of $3,052.05 and, in addition, the costs and attorney fees caused to be incurred by plaintiff in this cause."

[2] Exhibits 1–11 comprised all of the written communications between Mr. Rosin and defendant up until the date of deposition, November 22, 1967. These communications dealt primarily with the medical coverage provided for under the Lachman insurance policy. Uninsured motorists' coverage pursuant to the policy provisions was inquired into by plaintiff's counsel for the first time in letters, dated October 19, 1966, and November 21, 1966, in response to which a letter from defendant to plaintiff's counsel, dated December 6, 1966, set out the "exclusion clause 1" of the policy. Plaintiff's counsel communicated orally with defendant only through its adjuster, Mr. Virgil Ramey, in 1963, after which oral communications did not resume until just before trial in the Firosz case in 1966. The 1963 oral conversations dealt solely with medical coverage under the Lachman policy. No request was made on the Company for a copy of the policy. The following is a partial quotation from the deposition of Mr. Rosin:

"Q. So at least up until the time this present litigation was started, you didn't see Lachman's policy or a copy of it; is that right?

"A. That is right.

"Q. Did you ever try to get one from anybody? When I say that, I mean Lachman, of course, himself.

"A. My recollection is I asked Mr. Naparstek about the possibility of seeing Mr. Lachman's policy shortly after the collision, and they were not communicating with each other.

"Q. You never made any efforts as far as Lachman himself is concerned?

"A. I don't think so.

of the policy, that by defendant's failure to so inform plaintiff's counsel it estops defendant from asserting the defense contained in the exclusionary clause.

---

"*Q.* So far as you recall you didn't ask anybody from Citizens' for a copy of the policy?

"*A.* That is right."

Two days prior to trial in the Firosz litigation which commenced on October 19, 1966, Rosin contacted defendant and spoke to a Mr. Murphy in the Detroit office when unable to get in touch with Mr. Ramey there. In testifying as to what was said, Rosin stated:

"*A.* Well, before I talked to Mr. Ramey, I called the Detroit office and asked for him. I was advised Mr. Ramey was no longer there, and I spoke to a Mr. Murphy.

"I pointed out the situation, that a trial was coming up in a short while; that there may be uninsured motorist's coverage on the part of Mr. Lachman for his passenger, and that if so, I would like to know what Citizens' Mutual's position was going to be, because I believed that the judge would possibly favor a request to adjourn the case if they wanted to get in it.

"Mr. Murphy told me, I believe a little later, that—

"*Q.* In this same phone conversation?

"*A.* No. I think a little later that day or possibly the next day that I should get in touch with Mr. Ramey because the file was not in his possession, or that he didn't know what the position of the company would be, and he told me that Mr. Ramey was in Howell at the main office.

"I called Mr. Ramey immediately.

"*Q.* When did you talk to Ramey? That same day?

"*A.* When Murphy told me that he could not handle it and I should talk to the main office.

"*Q.* It was either that same day or the next day, right?

"*A.* That's right. I got Mr. Ramey on the telephone. I reminded him of our earlier discussions, which of course he had to check. He told me he was going to look into it.

"And I asked him then what the purpose would be of his looking into it. He answered me by saying, 'We may enter on the defense of this case,' or words to that effect.

"He called me reasonably shortly after that, possibly the same day or the next day—it was no later than the day before the trial— and told me that he had decided that the company would take its chances.

*   *   *

"*Q.* So far as the uninsured motorist's coverage was concerned, when did you learn there was such coverage?

"*A.* When I spoke to Mr. Murphy or Mr. Ramey, I've forgotten which.

"*Q.* Just a day or two before the trial?

"*A.* That's right.

"*Q.* You didn't know about it before then?

"*A.* No. In fact, it had only come to my attention that policies covering uninsured motorists might protect the guest passenger three or four days before trial.

In reviewing the allegations in plaintiff's complaint and the deposition of Mr. Rosin, counsel for plaintiff, we find that defendant had no knowledge that Firosz was an uninsured motorist until 2 days before plaintiff took a judgment in the case. At that time, by telephone, defendant's agent was asked if it wanted to have the case adjourned. Plaintiff's counsel never asked for a copy of the policy nor did he ask to see it or to be informed of its terms. Defendant had paid the claim of the plaintiff for his medical and hospital expenses. It was asked if it wanted to intervene in the case by plaintiff's counsel, and the reply of the defendant was in the negative. In 3 Callaghan's Michigan Pleading & Practice, § 36.94, p 491, it is stated:

"An insured person  *  *  *  must be presumed to have known its terms and conditions." *House* v. *Billman* (1954), 340 Mich 621; *Rossbach* v. *Continental Ins. Co. of New York* (1936), 276 Mich 122; *Geraghty* v. *Washtenaw Mutual Fire Insurance Co.* (1906), 145 Mich 635.

---

"*Q.* I see. Did Ramey admit to you that they did have uninsured motorist's coverage?

"*A.* Yes.

"*Q.* There was no argument about that?

"*A.* There was no argument about that.

"*Q.* Did you ask him for a copy of the policy?

"*A.* No, I did not."

After judgment in plaintiff's favor in the Firosz case, Mr. McIsaac of defendant's legal department wrote Rosin on December 6, 1966, in response to Rosin's written suggestion to the company that the company may be liable to plaintiff pursuant to the uninsured motorist's coverage. McIsaac's letter and subsequent telephone communication with Rosin indicated that defendant would rely upon the exclusionary provision of the policy requiring the written waiver by defendant to prosecute an action against the tort-feasor. This was affirmed by Virgil Ramey on December 9, 1966, in an oral conversation with Rosin.

Upon examination by plaintiff's co-counsel, Mr. Kobel, Rosin testified that neither Ramey nor Murphy offered a copy of the insurance policy, outlined the content of the uninsured motorist's clause, nor informed him of the exclusionary feature of the policy relating to uninsured motorist's coverage in their oral communications.

In *Cleaver* v. *Traders' Insurance Company* (1888),
71 Mich 414, 417, it is stated:

"As we said when the case was here before, it was
the duty of the plaintiff to know what his contract
of insurance was, and the insured must be held to
a knowledge of the conditions of his policy, as he
would be in the case of any other contract or agree-
ment.   The fact that plaintiff had never seen his
policy does not help him any more than the fact that
he had not read it, which appeared upon the first
trial.   There is no adequate reason shown why he
could not have seen the policy had he desired to do
so, and the same was not kept from him through
any fault or fraud of the defendant or its agent."

The foundation of plaintiff's claim to place in op-
eration the theory of waiver or estoppel is based
upon his allegation that "defendant, by virtue of
its promises, representations, and guarantees as
aforesaid, has intentionally misled plaintiff, caused
him detrimentally to rely on promises, representa-
tions, and guarantees which defendant did not intend
to fulfill and which defendant knew were untrue."   In
reviewing the complaint and the depositions we fail
to find where defendant made any "promises, rep-
resentations, and guarantees" to plaintiff's counsel
or plaintiff.   It is true that defendant did not volun-
tarily offer to send plaintiff's counsel a copy of the
policy nor did it offer to counsel or advise the plain-
tiff as to his procedure to be followed in his case
against Firosz.   By the same token plaintiff's coun-
sel did not ask defendant for counsel or advice nor
did he ask for the policy or to be informed of its
contents.   It was unfortunate that plaintiff's counsel
was uninformed as to Firosz being an uninsured
motorist until just before he proceeded to take judg-
ment.   At that time defendant had closed its file and
decided not to intervene in plaintiff's case against

Firosz as a third-party plaintiff to recover hospitalization and medical payments made to defendant under the policy. In 32 CJ, Insurance, § 620, pp 1345, 1346, on the question of silence as a waiver or estoppel it states in part as follows:

"(6) Silence or inaction. In the case of a breach of condition or of a promissory warranty or representation after the issuance of the policy, mere silence upon the part of the company will not, at least where insured is not misled, constitute a waiver, * * * A waiver or estoppel may be predicated upon the silence or inaction of the company where it is apt to mislead and does mislead insured. * * *

"Notice of intention. Silence or nonaction of the company upon notice, not amounting to a request for permission, of an intention to do something in violation of a condition of a policy, does not show a waiver, but this rule does not apply where insured notifies the company that he is doing an act which will constitute a breach and receives aid from the company in its accomplishment."

Plaintiff's counsel has admitted that defendant informed him by telephone approximately 2 days before taking the judgment that they would stand upon the policy and take their chances. At no time did plaintiff seek to be informed of the contents of the policy or ask for a copy of it. We cannot say that plaintiff has raised the fact issue whether he relied upon any silence or failure of defendant to inform the plaintiff of the exclusionary clause. Defendant did not encourage plaintiff to take the judgment nor did it make any promises, representations, or guarantees. *Security Insurance Company* v. *Fay* (1871), 22 Mich 466, 473 states:

"The waiver that is spoken of in these cases is another term for an estoppel. It can never arise by implication alone, except from some conduct which induces action in reliance upon it, to an extent that

renders it a fraud to recede from what the party has been induced to expect. It is only enforced to prevent fraud."

In another case, *Hyman* v. *Boyle* (1927), 239 Mich 357, 361, it reiterates that waiver may be proved:

" 'By acts and conduct manifesting an intent and purpose not to claim the supposed advantage, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive.' 27 RCL p 911.

" 'A waiver may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon. And a person who does some positive act which, according to its natural import, is so inconsistent with the enforcement of the right in his favor as to induce a reasonable belief that such right has been dispensed with, will be deemed to have waived it.' *Swedish American National Bank of Minneapolis* v. *Koebernick* (1908), 136 Wis 473 (117 NW 1020, 128 Am St Rep 1090)."

Plaintiff cites several cases in support of his position including *Bielski* v. *Wolverine Insurance Company* (1967), 379 Mich 280; *Andeen* v. *Country Mutual Insurance Company* (1966), 70 Ill App 2d 357 (217 NE2d 814); and *Matthews* v. *Allstate Insurance Company* (ED Va 1961), 194 F Supp 459. All these cases are distinguishable from the instant case on their facts and therefore are not applicable.

We conclude that plaintiff's claim that defendant waived the right to assert the exclusionary clause as to plaintiff or that by its action or nonaction it is estopped to assert it is untenable.

Affirmed.   Costs to appellee.

All concurred.